VICTORY, J.*
hln this workers’ compensation case, the workers’ compensation judge (“WCJ”) awarded claimant supplemental earnings benefits (“SEBs”), penalties, and attorney fees, finding the employer’s failure to pay benefits arbitrary and capricious. The court of appeal affirmed. We granted cer-tiorari to determine whether the lower courts used the correct standard in determining the claimant was entitled to SEBs. For the reasons that follow, we reverse the judgment awarding claimant SEBs, penalties, and attorney fees, and render judgment in favor of the employer.
FACTS AND PROCEDURAL HISTORY
Emile Poissenot (“Poissenot”) was an employee of the St. Bernard Parish Sher *172 iffs Office (“SBPSO”) working in a juvenile detention center as a deputy sheriff. On September 18, 2004, Poissenot fractured the small finger on his right hand while attempting to subdue a prisoner. That same day, he was treated at Tulane University Hospital, where he underwent a closed reduction and pinning of the fracture.[1] He was released from the hospital on September 20, 2010 with pain medication.
12After his initial treatment, Poissenot continued treatment with Dr. Eric George, an orthopaedic surgeon specializing in surgery of the hand and upper extremities. Under Dr. George’s care, he underwent two additional outpatient surgical procedures on the same finger. The first surgery, on October 8, 2004, was to remove the retained hardware from the initial surgery, and to insert a buttress plate on the bone of the little finger to properly realign it. On October 18, 2004, Dr. George removed the stitches, placed him in a cast for two weeks, and released him to light duty work. On December 1, 2004, Dr. George released Poissenot to return to full work. On December 31, 2004, Dr. George performed another surgery to remove the hardware to free the tendons for better movement. He was released from formal therapy on February 17, 2005. Poissenot was ultimately diagnosed as having a permanent partial disability of 19% of the right hand and 17% of the right upper extremity.[2] In June 2005, he voluntarily took a function capacity exam (“FCE”) which concluded he could perform medium level work activity. Significant deficits listed were “decreased grip of right upper extremity,” “decreased ROM of right 4th and 5th MCP, PIP, and DIP,”[3] and “pain with pressure and palpation of hand.” The FCE documented Poissenot’s reported pain at a level two out of ten, with ten being the highest pain.
Poissenot returned to work after the accident with some accommodation as a deputy at the same juvenile facility.[4] He remained employed with the SBPSO until 1 ^September 2005, when he was furloughed, along with every other juvenile detention center employee, as a result of Hurricane Katrina. In April 2006, he filed a Disputed Claim for Compensation with the Office of Worker’s Compensation.
After a trial on the merits, the WCJ awarded him SEBs under La. R.S. *173 23:1221(3)(a),[5] finding that, due to the injury, he was unable to earn 90% of the wages he was earning at the time of the injury. In so holding, the WCJ relied on “one | situation recognized by the courts in which SEB is due ... when the injured employee cannot perform his past job and there is no other proof of employability,” which the WCJ found was also the case here. The WCJ found “there is no question Poissenot cannot return to work as a deputy sheriff without significant accommodation [and] [t]hus far no other parish has been willing to make those accommodations.” Holding that “no earning capacity [was] established at the time of trial,” the WCJ calculated benefits based upon “zero earning capacity.” Further, because SBPSO offered no vocational rehabilitation post termination or further employment at a different position, the WCJ awarded Poissenot penalties and attorney fees finding this failure arbitrary and capricious. SBPSO appealed and the Fourth Circuit Court of Appeal affirmed the judgment holding, “Poissenot has effectively demonstrated that he cannot perform the same type of work that he was performing prior to the accident.” Poissenot v. St. Bernard Parish Sheriffs Office, 09-636 (La.App. 4 Cir. 11/24/09), 26 So.3d 829, 834. We granted the SBPSO’s writ application, which asserted (1) that the court of appeal used an incorrect standard in determining Poissenot was entitled to SEBs, and (2) that the WCJ committed manifest error in holding Poissenot met his initial burden of proof that his injury resulted in his inability to earn 90% of his pre-accident wages, and, in awarding Poissenot penalties and attorney fees. Poissenot v. St. Bernard *174 Parish Sheriffs Office, 09-2793 (La.4/23/10), 32 So.3d 809.
DISCUSSION
“The purpose of [SEBs] is to compensate the injured employee for the wage earning capacity he has lost as a result of his accident.” Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97), 696 So.2d 551, 556. An employee is entitled to receive SEBs if he sustains a work-related injury that results in his | .inability to earn ninety percent (90%) or more of his average pre-injury wage. La. R.S. 23:1221(3)(a). Initially, the employee bears the burden of proving, by a preponderance of the evidence, that the injury resulted in his inability to earn that amount under the facts and circumstances of the individual case. Banks, supra at 556. “In determining if an injured employee has made out a prima facie case of entitlement to [SEBs], the trial court may and should take into account all those factors which might bear on an employee’s ability to earn a wage.” Daigle v. Sherwin-Williams Co., 545 So.2d 1005, 1009 (La.1989) (quoting Gaspard v. St. Paul Fire and Marine Ins. Co., 483 So.2d 1037, 1039 (La.App. 3 Cir.1985)). It is only when the employee overcomes this initial step that the burden shifts to the employer to prove, by a preponderance of the evidence, that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in his or the employee’s community or reasonable geographic location.[6] La. R.S. 23:1221(3)(c)(i); Banks, supra at 556; Daigle, supra at 1009.
| fiThe analysis is necessarily a facts and circumstances one in which the court is mindful of the jurisprudential tenet that workers’ compensation is to be liberally construed in favor of coverage. Daigle, supra at 1007. Further, factual findings in workers’ compensation cases are subject to the manifest error or clearly wrong standard of appellate review. Smith v. Louisiana Dept. of Corrections, 93-1305 (La.2/28/94), 633 So.2d 129, 132; Freeman v. Poulan/Weed Eater, 93-1530 (La.1/14/94), 630 So.2d 733, 737-38. In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfin-der’s conclusion was a reasonable one. Freeman, supra at 737-38; Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880, 882 (La.1993); Mari v. Hill, 505 So.2d 1120, 1127 (La.1987). “In determining whether a [WCJ’s] finding that an employee has met his initial burden of proving entitlement to SEBs is manifestly erroneous, a reviewing court must examine all evidence that bears upon the employee’s inability to earn 90% or more of his pre-injury wages.” Seal v. *175 Gaylord Container Corp., 97-0688 (La.12/2/97), 704 So.2d 1161, 1166.
We initially note that the court of appeal applied the incorrect standard in determining whether Mr. Poissenot met his initial burden of proof. In its opinion, the court of appeal held, “[t]he record before us does not indicate that Mr. Pois-senot could perform the same type of medium level work that he performed before his accident in any occupation.” Poisse-not, supra at 833. Likewise, the WCJ awarded SEBs based on his finding that Poissenot “cannot return to work as a Deputy Sheriff without significant accommodation” and that no other parish had been willing to make those accommodations, and stated the law as entitling a claimant to SEBs where he cannot return to his past job and there is no other proof of employability. This is [7an incorrect standard. La. R.S. 23:1221(3)(a) requires that a claimant prove by a preponderance of the evidence that he is unable to earn wages equal to ninety percent or more of wages he was earning at the time of injury “whether or not the same or similar occupation as that in which the employee was customarily engaged when injured.” (Emphasis added). The statute clearly places its focus on the amount of wages earned before and after the accident, not the type of occupation or the type of work performed. In reviewing the lower courts’ judgments, we will examine all the evidence that bears upon the employee’s inability to earn 90% or more of his pre-injury wages to determine whether Poissenot met his initial burden.
As a deputy, Mr. Poissenot earned an average monthly wage of $1,694.50. To meet his burden, he would have to show by a preponderance of the evidence that he was unable to earn at least $1,525.05[7] a month because of his injury. The evidence put on at trial was very limited. Poissenot and his former supervisor, Joseph Giroux, were the only two witnesses called by the claimant. Poissenot testified that before the accident he would feed the prisoners, issue medications to them, take them to court and doctors appointment, and subdue them when necessary. After the accident, he was assigned to light duty with SBPSO. Both Poissenot and Giroux testified that after the accident, Poissenot could not carry a gun, qualify with a weapon, go into cells, or provide backup to other deputies.[8] His duties included watching surveillance cameras, answering the phone, and doing paperwork. He testified he was in a lot of pain and that he could not use the ring or pinkie finger of his right hand, but he could write and type on a computer, albeit slowly. Poissenot further testified he has no education beyond high school, and, aside from a job as a baker, all of his job | ¡¡experience was in law enforcement.[9] He also testified that he could not find employment due to his injury. In support of this assertion, he testified he left his resume at the Employment Center in St. Tammany Parish and *176 was contacted by the St. Tammany Sheriffs Office about a job as a bailiff, he applied for a job with a security company in Slidell, a printing company in St. Tammany Parish, and a tourist center in Florida. No one offered him employment. However, he testified that but for Hurricane Katrina, he would still be working for SBPSO.
SBPSO contends Poissenot did not met the initial burden set out in La. R.S. 23:1221(3) according to the objective evidence, and that therefore, the burden of proof never shifted to it to prove anything. SBPSO did not present any witnesses but entered into evidence a deposition given by Dr. George and the FCE. That evidence showed that Dr. George released Poissenot to return to full work on December 1, 2004. Further, the FCE confirmed Dr. George’s findings that Poissenot could return to medium level work activity, specifically stating:
This client could return to medium level work activity. This client could perform continuous forward bending in sitting, standing tolerance, sitting tolerance, left upper extremity coordination, stair climbing, rotation in sitting and standing, walking, and repetitive squatting. This client could perform frequent crawling, right upper extremity coordination, step ladder climbing, and elevated work.
His employment before the injury was also classified as medium level work. Most significantly, SBPSO argues, Poissenot returned to work after his injury at the same salary and was able to work overtime. He continued to work there from October of 2004 to September 2005, when he was furloughed along with every other SBPSO ^employee because of Hurricane Katrina. Thus, SBPSO claims, the injury did not cause him to lose him job, Hurricane Katrina did.
Implicit in La. R.S. 23:1221(3)’s requirement that the employee show that a work-related injury resulted in his inability to earn 90% of his pre-injury wages is a showing that the injury, and not some other cause, resulted in his inability to retain his pre-injury job. Where the employee goes back to his pre-injury job and then is terminated for a reason beyond the employer’s control and totally unrelated to the injury, this strongly suggests that his inability to earn 90% of his pre-injury wages was not the result of his injury and that the employee is in fact able to earn 90% of his pre-injury wages in some capacity. In Chaisson v. Cajun Bag and Supply Co., 97-1225 (La.3/4/98), 708 So. 375, 384, this Court held that the employer’s offer to place the employee “in a position that [she] could do [in spite of the injury] defeated the employee’s claim for SEB.” Further, the Court held that “[t]his conclusion is bolstered by the fact that [the employee] was able to perform, without difficulty, substantially similar work [for a different employer] for 9 months.” Id. at 384.
We recognize jurisprudence from this Court that a claimant’s ability to return to work for his former employer does not always foreclose entitlement to SEBs. In Allen v. City of Shreveport, 618 So.2d 386, 388, 389 (La.1993), where the employee was able to return to his pre-injury sedentary job but the position had been eliminated before he could return, the Court held that “[i]t is irrelevant whether the claimant is physically able to perform his former sedentary job that is no longer available” and that “[t]he relevant question is whether the claimant is partially disabled and whether he is able to earn 90% of the wages he was earning prior to the injury.” However, unlike in Allen, where the doctor released the claimant to return to light duty in a sedentary job with specif *177 ic physical limitations, here Poissenot was cleared to return 110to medium duty work with no specific physical restrictions which would prevent him from earning 90% of his pre-injury wages. Moreover, Poisse-not’s post-injury work was not sedentary. While there are certainly limits to the tasks he can perform because of his broken right finger, common sense tells us that there are plenty of jobs an otherwise healthy man with his depth of experience and training would be able to perform. Indeed, after remand in Allen, this Court distinguished the facts in Allen from eases where claimants were not awarded SEBs because they were released to full work status with no restrictions but could not find employment due to a depressed labor market. Allen v. City of Shreveport, 93-2928 (La.5/23/94), 637 So.2d 123, 127 (citing Babineaux v. Brown & Root, Inc., 543 So.2d 946 (La.App. 5 Cir.1989) and Miller v. Great Southern Oil & Gas Co., Inc., 503 So.2d 679 (La.App. 3 Cir.1987)). Further, while an employer cannot avoid paying compensation benefits to an injured employee by creating a job that accommodates the injured employee’s work restrictions and then firing the injured employee, Synigal v. Vanguard Car Rental, 06-761 (La.App. 5 Cir. 1/30/07), 951 So.2d 1197; Palmer v. Alliance Compressors, 05-478 (La.App. 3 Cir. 11/2/05), 917 So.2d 510, writ denied, 05-2440 (La.3/24/06), 925 So.2d 1231; Brumley v. Nantachie Oil Co., 04-1404 (La.App. 3 Cir. 3/16/05), 900 So.2d 944, this is not such a case. Here, Poisse-not was terminated along with every other employee for reasons beyond SBPSO’s control one year following the accident; he was not hired and fired as a pretext to deny him benefits. See Taylor v. Columbia Chemicals, 32, 411 (La.App. 2 Cir. 10/27/99), 744 So.2d 704 (no entitlement to SEBs where employee would have and could have continued her former employment but for the plant being closed).
The trial court found Poissenot met his burden, even though he continued in his pre-injury employment, because the employer offered significant accommodations |nthat no other sheriffs office would make. However, while no other sheriffs office may have been willing to hire him with his right hand limitations, this is too narrow an inquiry. As stated, the law does not require that a plaintiff be unable to engage in the same or similar employment as when he was injured to qualify for SEBs. The law requires the trial court take into account all those factors which might bear on an employee’s ability to earn a wage in determining if an injured employee has made out a prima facie case of entitlement to SEBs. While Poissenot was turned down for employment after he was furloughed from SBPSO, two of the jobs he applied for were in law enforcement where the use of a gun would be necessary-and Poissenot knew he was no longer certified to use a gun. The other job, at a printing company, required heavy lifting, which is not a medium level job. Although he testified he “spoke to someone about helping out in the bakeries” in St. Tammany, and “spoke with family members who were working at a Walmart about a stock job,” there was no evidence he actually applied for those jobs. Moreover, in this case, Poissenot’s employment post-injury shows, at the very least, that he was able to answer phones, monitor cameras, sit for extended periods of time, and perform clerical work, and his prior work experience with over 20 years as an investigator with the NOPD and DA’s office shows he is highly trained. Further, both the functional capacity exam voluntarily taken by Mr. Poissenot and his own doctor cleared him to return to medium level work, and his pre-accident job was also rated medium level work. The most significant negative factor in all of the medical evaluations *178 conducted was Poissenot’s complaint of pain, which the doctors evidently did not feel prevented him from returning to medium level work. Further, while undergoing the FCE, Poissenot reported his pain level as a two, on a ten point scale. There was simply no medical evidence presented supporting Poissenot’s claim that he is unable to earn 90% of his | ^.pre-injury wages. Finally, while Poissenot argues that he returned to his job with significant accommodations as a “sheltered employee,” La. R.S. 23:1221(3)(b) provides that the amount the employee actually receives from sheltered employment is to be considered in the amount the employee is able to earn under La. R.S. 23:1221(3)(a).[10]
In this case, the majority of evidence and testimony presented focused on the fact that he could not do the same type of work or same level of work as he was doing before the injury. However, under La. R.S. 23:1221, that is not the proper focus. Only when the claimant meets his initial burden does it shift to the employer to show that the employee is physically able to perform a certain job and that the job was offered to the employee or that job was available to the employee in his or the employer’s community or reasonable geographic region. The burden does not shift to the employer merely because an employee proves he is unemployed at the time of trial or unable to obtain the same type of job as before the accident.
After review of the applicable law, we find the lower courts erred in finding Pois-senot met his initial burden of proof because they focused on whether Poissenot could return to the same type of work he was performing before the accident, rather than on whether Poissenot could earn 90% of his pre-injury wages. A review of all the evidence that bears upon Poissenot’s ability to earn 90% or more of his pre-injury wages reflects Poissenot did not meet his initial burden; therefore, the burden never shifted to SBPSO and thus he is not entitled to SEBs. Further, because | iaPoissenot is not entitled to SEBs, he is not entitled to attorney fees and penalties under La. R.S. 23:1201(1)[11].
CONCLUSION
Under La. R.S. 23:1221(3)(a), a claimant is required to prove by a preponderance of the evidence that a work related injury resulted in his inability to earn wages equal to 90% or more at the time of the injury. Louisiana law does not require that a plaintiff be unable to engage in the same or similar occupation as when he was injured in order to qualify for SEBs. In this case, the medical evidence, as well as Poissenot’s actual work history after the accident, demonstrate he was capable of earning 90% of his pre-injury wages, and he failed to produce sufficient evidence showing otherwise. Because he failed to bear his initial burden of proof, the burden never shifted to SBPSO to prove that jobs existed for Poissenot in his geographic area that would have paid him 90% of his *179 pre-injury wages. Therefore, the lower courts erred in awarding him SEBs and, because he is not entitled to SEBs, he cannot be awarded penalties and attorney fees under La. R.S. 23:1201(1).
DECREE
For the reasons stated herein, the judgment of the court of appeal granting Mr. Poissenot supplemental earnings benefits, penalties, and attorneys fees is reversed and judgment is rendered in favor of St. Bernard Parish Sheriffs Office.
REVERSED AND RENDERED.
KNOLL, J., dissents and assigns reasons.
KNOLL, J.,
dissenting.
hit is well settled that the provisions of the worker’s compensation act must be given a liberal interpretation in favor of the claimant. Daugherty v. Domino’s Pizza, 95-1394, pp. 8-9 (La.5/21/96), 674 So.2d 947, 953; Daigle v. Sherwin-Williams Co., 545 So.2d 1005, 1006 (La.1989). The threshold prerequisite to the recovery of supplemental earnings benefits, as set forth in La.Rev.Stat. 23:1221(3)(a), is that the employee’s injury result in his inability to earn wages equal to ninety percent or more of his average pre-injury wage. Daigle, 545 So.2d at 1007. The injured employee thus bears the burden of proving by a preponderance of the evidence that the injury resulted in his inability to earn that amount under the facts and circumstances of the individual case. Seal v. Gaylord Container Corp., 97-0688, p. 8 (La.12/2/97), 704 So.2d 1161, 1166. The analysis is necessarily a facts and circumstances one in which the court is mindful of the jurisprudential tenet that worker’s compensation law is to be liberally construed in favor of coverage. Daigle, 545 So.2d at 1007; Seal, 704 So.2d at 1166. In determining if an injured employee has made out a prima facie case of entitlement to supplemental earnings benefits, the trial court may and should take into account all those factors which might bear on an employee’s ability to earn a wage. Daigle, 545 So.2d at 1007.
|2In reversing the lower courts’ judgments, the majority errs by substituting its factual findings for those of the hearing officer. Factual findings in workers’ compensation cases are subject to the manifest error or clearly wrong standard of review. Banks v. Indus. Roofing & Sheet Metal Works, 96-2840 p. 7 (La.7/1/97), 696 So.2d 551, 556. When determining whether a hearing officer’s finding that a claimant has met his initial burden of proving entitlement to SEBs was manifestly erroneous, a reviewing court must examine the record for all evidence that bears upon the claimant’s inability to earn 90% or more of his pre-injury wages. Seal, 704 So.2d at 1166. A review of the record in its entirety demonstrates the hearing officer’s finding that Mr. Poissenot met his initial burden was reasonable.
Dr. George diagnosed claimant with a permanent partial disability of 19% of the right hand and 17% of the right upper extremity. Claimant is right hand dominant. Claimant underwent three surgeries. He testified that Dr. George gave him the option of a fourth surgery but Dr. George was not very optimistic. Undisputed medical testimony indicates the claimant still has considerable stiffness and pain in his right hand. Claimant testified that he is limited in writing and typing because of the pain.
After his injury, claimant returned to work with the St. Bernard Parish Sheriffs Office (SBPSO) with accommodations for his limitations. Even with these accommodations, there was evidence before the workers’ compensation judge (WCJ) that *180 Mr. Poissenot was unable to subdue prisoners or provide backup to the deputies. After he was furloughed from the SBPSO, he was unable to find work. Even though he sought jobs in non-law enforcement capacities (a printing company and a tourist center), he was rejected because of his disability. Nor could he return to his previous occupation of baking because of his disability.
|sThe majority opinion attempts to avoid applying the manifest error standard of review by stating the wrong standard was applied in determining whether SEBs were due. Specifically, the majority states: “The statute clearly places its focus on the amount of wages earned before and after the accident, not the type of occupation or the type of work performed.” Clearly, it is incorrect to interpret “wages” in a vacuum. It must be read with the “inability” to earn wages equal to ninety percent. The inability to earn the wages is a factual determination based upon the claimant’s disability. The attempt to distinguish between “the amount of wages” and the inability to earn the amount of wages, as though they are different concepts, is erroneous and ignores the underlying principles of the Workers’ Compensation Act, which is based upon the disability of the claimant.
The majority avers the WCJ mischarac-terized the law as entitling a claimant to SEBs where he cannot return to his past job and there is no other proof of employa-bility. However, a review of the WCJ’s written reasons for judgment clearly demonstrates the WCJ knew the employee’s burden of proof in seeking SEBs and that the claimant had to prove inability to earn ninety percent of his pre-injury wages whether or not in the same or similar occupation. The WCJ found Mr. Poisse-not alleged “he has been unable to obtain any work at which he would earn at least ninety percent of his pre-injury wage [and] [defendant offered no evidence to dispute or refute this fact.” (Emphasis supplied). A review of the written reasons and judgment in its entirety does not support the majority’s determination that the WCJ used the wrong standard in its decision. Therefore, the proper standard of review is a manifest error one and not de novo.
I am not persuaded by the majority’s attempt to distinguish this case from Allen v. City of Shreveport, supra, at p. 9. The majority finds Allen distinguishable because |4there, the claimant was released to sedentary work with light restrictions whereas Mr. Poissenot was cleared to return to medium duty work with no specific physical restrictions. The majority then states “common sense tells us that there are plenty of jobs an otherwise healthy man with his depth of experience and training would be able to perform.” This is not appropriate in a manifest error standard of review and cannot even be classified as weighing the evidence or inferring facts, as it is a statement not even based upon evidence or testimony from the trial. I find the rationale from Allen equally applicable here:
Plaintiffs medical and lay evidence established that his earning ability continued to be impaired, even though his doctor released him for ... employment with certain restrictions that would not prevent his performing the duties of his former position. Plaintiff undoubtedly was partially disabled, and his entitlement to supplemental earnings benefits was dependent upon his proof that the disability resulted in an inability to earn wages equal to at least ninety percent of his pre-injury wages. Plaintiff met this burden of proof by evidence, accepted by the trier of fact, that his medical *181 restriction prevented him from working at available jobs....
Allen, 618 So.2d at 389.
Contrary to the majority, I find the record before the WCJ demonstrated by a preponderance of the evidence that claimant was unable to earn wages equal to ninety percent or more of wages he was earning at the time of the injury. A reviewing court may not reverse the lower court’s findings even when convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Dean v. Southmark Constr., 03-1051, p. 7 (La.7/6/04), 879 So.2d 112, 117. Because there is reasonable support in the evidence and testimony before the WCJ to support his finding the work-related injury resulted in claimant’s inability to earn ninety percent of the wages he was earning at the time of the accident, I respectfully dissent.

 Retired Judge Philip C. Ciaccio, assigned as Justice ad hoc, sitting for Chief Justice Catherine D. Kimball.

. Specifically, the reduction was to pin the little finger to the ring finger.

. Dr. George testified Poissenot could bend the middle joints of his fingers but "has significant limitations in bending the joints in to fisted flexion, i.e., in making a fist, because the last two digits remain flexed.” Dr. George did not see him between April 2005 and January 2007, at which time he saw a little improvement in his arc of motion.

. These abbreviations indicate decreased range of motion of the first, second, and third knuckles of the ring and little finger.

. Employment records indicate he was paid for the following hours after his accident: (1) for the two weeks prior to October 5, 2004, he was paid 48 hours of illness pay and 38.17 hours of regular pay; (2) for the two weeks prior to October 20, 2004, November 5, 2004, November 19, 2004 and December 3, 2004, he was paid for 86.67 regular hours, respectively; (3) for the two weeks prior to December 20, 2004, he worked his regular hours, plus eight hours of overtime. On December 31, 2004, he underwent his third outpatient surgery. His paycheck for January 5, 2005, which encompassed that period, indicates he worked 78.67 regular hours plus three hours of overtime, and earned 8 hours of vacation pay. His paycheck dated January 20, 2005, indicates he earned 22.67 hours of regular pay plus 64 hours of illness pay. For the remainder of his employment with SBPSO, he consistently worked his full-time regular hours, and worked additional overtime hours for three of the pay periods.

. La. R.S. 23:1221 provides in part:
(3) Supplemental earnings benefits.
(a) For injury resulting in the employee’s inability to earn wages equal to ninety percent or more of wages at time of injury, supplemental earnings benefits equal to sixty-six and two-thirds percent of the difference between the average monthly wages at time of injury and average monthly wages earned or average monthly wages the employee is able to earn in any month thereafter in any employment or self-employment, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of the injury was particularly fitted by reason of education, training, and experience, such comparison to be made on a monthly basis. Average monthly wages shall be computed by multiplying his "wages” by fifty-two and then dividing the quotient by twelve.
(b) For purposes of Subparagraph (3)(a), of this Paragraph, the amount determined to be the wages the employee is able to earn in any month shall in no case be less than the sums actually received by the employee, including, but not limited to, earnings from odd-lot employment, sheltered employment, and employment while working in any pain.
(c)(i) Notwithstanding the provisions of Subparagraph (b) of this Paragraph, for purposes of Subparagraph (a) of this Paragraph, if the employee is not engaged in any employment or self-employment, as described in Subparagraph (b) of this Paragraph, or is earning wages less than the employee is able to earn, the amount determined to be the wages the employee is able to earn in any month shall in no case be less than the sum the employee would have earned in any employment or self-employment, as described in Subparagraph (b) of this Paragraph, which he was physically able to perform, and (1) which he was offered or tendered by the employer or any other employer, or (2) which is proven available to the employee in the employee’s or employer’s community or reasonable geographic region.
(ii) For purposes of Subsubparagraph (i) of this Subparagraph, if the employee establishes by clear and convincing evidence, unaided by any presumption of disability, that solely as a consequence of substantial pain, the employee cannot perform employment offered, tendered, or otherwise proven to be available to him, the employee shall be deemed incapable of performing such employment.

. In Banks, we clarified the employer’s burden as follows:
... an employer may discharge its burden of proving job availability by establishing, at a minimum, the following, by competent evidence:
(1) the existence of a suitable job within claimant's physical capabilities and within claimant’s or the employer’s community or reasonable geographic region;
(2) the amount of wages that an employee with claimant’s experience and training can be expected to earn in that job; and
(3)an actual position available for that particular job at the timé the claimant received notification of the job’s existence.
By "suitable job,” we mean a job that claimant is not only physically capable of performing, but one that also falls within the limits of claimant’s age, experience, and education, unless, of course, the employer or potential employer is willing to provide any additional necessary training or education. 696 So.2d at 557.

. This figure was arrived at by multiplying Mr. Poissenot’s average monthly wage of $1,694.50 by 90%, the percentage required in La. R.S. 23:1221(3).

. However, the testimony reflects that deputies were not allowed to carry guns inside the facility.

. Poissenot entered the Marine Corps after high school and was trained in a photo recon unit. He was then employed by the New Orleans Police Department for 16 years as a homicide and robbery investigator, and a forgery investigator. He then opened his own donut shop but left to work as an investigator for the Orleans Parish District Attorneys office, where he worked for 13 years until a new district attorney was elected. In 2002, he was hired by SBPSO.

. La. R.S. 23:1221(3)(b) provides that, for purposes of La. R.S. 23:1221(3)(c), "the amount determined to be the wages the employee is able to earn ... shall in no case be less than the sums actually received by the employee, including but not limited to, earnings from odd-lot employment, sheltered employment, and employment while working in pain.”

. La. R.S. 23:1201(1) states:
Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, and without probable case, shall be subject to the payment of a penalty not to exceed eight thousand dollars and a reasonable attorney fee for the prosecution and collection of such claims.