CARAWAY, J.
_JjThe workers’ compensation judge CWCJ”) denied the worker’s claim for continued supplemental earnings benefits and penalties and attorney fees for late com *760 pensation benefits after determining that the evidence failed to establish his inability to earn 90% of his pre-accident wages. For the following reasons, we affirm.

Facts

Kirby Roach, an instrument technician with Libbey Glass, Inc., since 1981, was electrocuted while at work on January 3, 2006, and received serious injury to his shoulder which required a total shoulder replacement. Roach returned to employment with Libbey on October 19, 2009, under permanent medical restriction. Lib-bey accommodated the restrictions which allowed Roach to return to his previous job as an instrument technician. Libbey paid temporary total disability benefits to Roach prior to his return to employment. Thereafter, Roach received supplemental earnings benefits (“SEBs”).
On January 13, 2011, Roach filed a disputed claim for workers’ compensation seeking penalties and attorney fees for late payment of SEBs. Libbey answered the claim denying Roach’s further entitlement to SEBs as well as Roach’s claim for penalties and attorney fees for untimely payment of SEBs due to Roach’s lack of entitlement to the SEBs paid.
Both sides agreed to stipulate the matter ■ by exhibits and briefs, which were submitted to the court on December 1, 2011. The exhibits included:
1) Roach’s 2005 W-2 that showed wages of $58,229.08;
2) Roach’s 2010 W-2 showing wages of $60,886.88;
|¾3) Documentation showing that Roach worked a total of 3242.59 hours in 2005;[1]
4) Affidavit of Libbey’s National Human Resource Manager, who attested to the fact that Roach’s hourly wage on January 3, 2006 was $19.91 and for January-December 2005 was $19.42;
5) Affidavit of Roach which indicated that he earned $19.91 per hour in January 2006 and $21.44 per hour as of December 2011. Roach attested to the fact that overtime hours are voluntary and that he could not perform his duties without significant accommodations being provided to him by Libbey due to his January 3, 2006 injury.
The Joint Trial Stipulation included the following facts:
1) Roach’s average weekly wage at the time of injury of $1,719.22;
2) Roach’s assertion that he was entitled to SEBs for each month that he failed to earn 90% of his pre-accident monthly wage of $7,449.95;
3) The Paycheck History of Roach and an unnamed co-employee from October 2009-October 2011 including hours worked by both employees but no wage information. The documents showed that the co-employee worked 2559.21 hours in 2010 and 2013.05 hours through October 2011. The documents also showed that Roach worked 3,055.06 in 2010 and 2065.21 through October 2011.
After considering all of the evidence, the WCJ denied Roach’s claim after determining that any diminution in salary was not shown to be “more-probably-than-not related to his work injury.” The court also denied penalties and attorney fees for late payment of benefits. This appeal by Roach ensued.

*761
Discussion

The 2006[2] version of La. R.S. 23:1221 which sets the requirements for entitlement to supplemental earnings benefits read as follows:
|s(3) Supplemental earnings benefits.
(a) For injury resulting in the employee’s inability to earn wages equal to ninety percent or more of wages at time of injury, supplemental earnings benefits equal to sixty-six and two-thirds percent of the difference between the average monthly wages at time of injury and average monthly wages earned or average monthly wages the employee is able to earn in any month thereafter in any employment or self-employment, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of the injury was particularly fitted by reason of education, training, and experience, such comparison to be made on a monthly basis. Average monthly wages shall be computed by multiplying his “wages” by fifty-two and then dividing the quotient by twelve.
The term, wages, is defined in relevant part by La. R.S. 23:1021(12) as follows:
“Wages” means average weekly wage at the time of the accident. The average weekly wage shall be determined as follows:
(a) Hourly wages.
(i) If the employee is paid on an hourly basis and the employee is employed for forty hours or more, his hourly wage rate multiplied by the average actual hours worked in the four full weeks preceding the date of the accident or forty hours, whichever is greater.
The purpose of SEBs is to compensate the injured employee for the wage earning capacity he has lost as a result of his accident. Poissenot v. St. Bernard Parish Sheriff’s Office, 09-2793 (La.1/9/11), 56 So.3d 170. An employee is entitled to receive SEBs if he sustains a work-related injury that results in his inability to earn 90% or more of his average pre-injury wage. Initially the employee bears the burden of proving by a preponderance of the evidence that the injury resulted in his inability to earn that amount under the facts and circumstances of the individual case. Poissenot, supra. In determining if an injured employee has made out a prima facie case of ^entitlement to SEBs the court may and should take into account all those factors which might bear on an employee’s ability to earn a wage. Id. Only when the employee makes this initial showing does the burden shift to the employer to prove that the employee is physically able to perform a certain job and that the job was offered to the employee in his or the employer’s community or reasonable geographic area. Id.
The analysis is necessarily a facts and circumstances one in which the court is mindful of the jurisprudential tenet that workers’ compensation is to be liberally construed in favor of coverage. Further, factual findings in workers’ compensation cases are subject to the manifest error or clearly wrong standard of appellate review which determines whether the factfinder’s conclusion was a reasonable one. Poissenot, supra. In making this determination a reviewing court must examine all evidence that bears upon the employee’s ina *762 bility to earn 90% or more of his pre-injury wages. Id.
The WCJ properly acknowledged Roach’s argument “that he need only show that he is making less than 90% of his pre-injury wage in order to shift the burden of proof’ to Libbey to show his ability to earn his pre-injury wage. Roach’s argument rests solely on the statutory mathematical calculations for “wages” and “average monthly wages” attributable to Roach at the time of the January 3, 2006 accident. Nevertheless, all of the actual, non-statutory wage/work circumstances surrounding Roach’s employment in 2005, the year before his accident, and 2010, the year before |shis filing of this claim, demonstrate the mathematical fallacy of that argument.
Roach’s “wages,” or average weekly wages, for his “actual hours worked in the four full weeks preceding” the accident was $1,719.22. The stipulations also revealed that he was being paid $19.91 per hour. Thus, although a regular 40-hour work week would have yielded Roach only $796.40 in wages per week, Roach obviously was involved in much overtime labor for the four weeks preceding his accident, making the statutory calculation of $1,719.22 for his four-week average much larger than normal. This average weekly wage calculation would further indicate annual wages of approximately $89,399 ($1,719.22 x 52 weeks) from a strictly mathematical standpoint. However, Roach’s annual wage income for 2005, the 52 weeks preceding the accident, was only $58,229. This comparison reveals that while Roach was clearly entitled during his period of total disability to receive wage benefits under the Act using the statutory $1,719.22 average weekly wage, the use of that amount alone for the measure of 90% of Roach’s work/wage earning ability is not necessarily decisive.
Three other economic measures revealed from the actual employment data are significant in this case. In 2005, Roach worked a total of 3242.59 hours, and in 2010, 3055.06 hours. This does not reflect that any continuing disability caused Roach’s actual time on the job to drop below 90%. Moreover, using a 40-hour work week for 52 weeks, or 2080 annual hours, the hours worked by Roach in both years reveals considerable overtime | ñwork. Likewise, Roach’s actual hourly wage has risen to $21.44 and his total annual wage for 2010 rose to $60,886.88. Finally, the 2559.21 annual work hours of a similarly situated instrument technician, Roach’s co-employee, was additionally stipulated evidence revealing that Roach has a work ability that has not been reduced below 90%.
Accordingly, we reject Roach’s argument based on the statutory average weekly wages calculated solely from the four-week wages earned before the accident. The WCJ correctly applied the broader measure of the Poissenot ruling, finding that the weight of all the actual wage data did not demonstrate the employee’s inability to earn 90% or more of his pre-injury wage.

Conclusion

For the foregoing reasons, the judgment of the WCJ is affirmed. Costs of appeal are assessed to appellant.
AFFIRMED.

. Libbey argues that in the four full weeks prior to Roach’s accident, the plant was in “shutdown mode,” a time when the regular operations of the plant are shut down. It is during this time that instrument technicians such as Roach work increased hours which result in large amounts of overtime. Additionally Roach received holiday pay during this time.

. Generally, the law governing an action for workers’ compensation benefits is the law in effect at the time of the injury. Frith v. Riverwood, Inc., 04-1086 (La.01/19/05), 892 So.2d 7.