# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 22-412


CLARENCE EARL BOS

VERSUS

PACKAGING CORPORATION OF AMERICA



\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION DISTRICT NO. 3
PARISH OF CALCASIEU, NO. 18-00279
JONATHAN W. BROWN, WORKERS' COMPENSATION JUDGE

\*\*\*\*\*\*\*\*\*\*

## D. KENT SAVOIE
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of D. Kent Savoie, Van H. Kyzar, and Gary J. Ortego, Judges.


**AFFIRMED.**

Thomas A. Filo
Cox, Cox, Filo, Camel & Wilson, L.L.C.
723 Broad Street
Lake Charles, LA 70601
(337) 436-6611
COUNSEL FOR PLAINTIFF/APPELLEE:
    Clarence Earl Bos

Phillip Edward Foco
Bienvenu, Bonnecoze, Foco, & Viator, LLC
4210 Bluebonnet Boulevard
Baton Rouge, LA 70809
(225) 388-5600
COUNSEL FOR DEFENDANTS/APPELLANTS:
    Packaging Corporation of America
    Boise Corporation of America

Max Malvin
Malvin Law, LLC
201 St. Charles Ave, Suite 2500
New Orleans, LA 70170
(504) 383-0895
COUNSEL FOR DEFENDANTS/APPELLANTS:
    Boise Cascade Corporation
    Packaging Corporation of America

**SAVOIE, Judge.**

Packaging Corporation of America ("PCA") appeals a workers' compensation judge's (WCJ's) judgment rendered in favor of Plaintiff, Clarence Bos, awarding him supplemental earnings benefits ("SEBs") for occupational noise-induced hearing loss resulting from his employment at a paper mill owned by PCA and its predecessors, as well as penalties and attorney fees. Mr. Bos answers the appeal and seeks an additional award of costs and attorney fees incurred in connection with the appeal.

For the following reasons, we affirm the judgment in favor of Mr. Bos and award $5,000.00 in attorney fees for additional work done on appeal.

## FACTUAL AND PROCEDURAL BACKGROUND

Mr. Bos began working for Boise Cascade Corporation (Boise Cascade), which is a predecessor of PCA, at a paper mill in 1978.[1] He was twenty two years old at that time. After working for almost forty years as an operator in the powerhouse, Mr. Bos retired in March 2017. At the time of his retirement, he had an annual salary of $115,505.00, which is equivalent to an average weekly wage of $2,144.33 per week. After leaving the paper mill, Mr. Bos completely retired from the workforce for reasons unrelated to hearing loss.

On January 19, 2018, Mr. Bos filed a workers' compensation claim against PCA, seeking benefits related to hearing loss resulting from his employment at the paper mill. On October 1, 2018, Mr. Bos was evaluated by his treating physician, Dr. Brad LeBert. Dr. LeBert opined that Mr. Bos had occupationally related noise-induced hearing loss as a result of his work at the paper mill, and he restricted Mr.

---

[1] PCA has stipulated that it is liable for any and all workers' compensation obligations that may be owed to Mr. Bos by its predecessors.

Bos's work to within National Institute for Occupational Safety and Health ("NIOSH") compliant environments. Mr. Bos also made formal demands on PCA on October 1, 2018 and August 14, 2019, seeking medical benefits, audiograms, hearing aids, vocational rehabilitation, and SEBs. Dr. LeBert also submitted a Form 1010 Request for Authorization for treatment on April 15, 2019.

A combined trial on the merits of Mr. Bos's claims, along with nearly identical claims asserted against PCA by former employees, Woodrow Colton and Marlon Hyatt, was held on June 24, 2021.[2] Following trial, the WCJ found that Mr. Bos proved by preponderance of the evidence that he suffers from occupational noise-induced hearing loss, he was given a work restriction by Dr. LeBert, and he was unable to earn ninety percent or more of his pre-injury wage. In his written reasons for judgment, the WCJ stated:

> It is useful to note from the outset the Court found the three claimants to be extremely credible. They described their time working for Boise (now PCA) with reverence and explicit detail. The Court was given a mental picture of what it was like working at the paper mill, along with the processes it took in order to complete their daily task.
>
> The claimants' testimony[,] along with the testimony of Dr. LeBert and the audiograms[,] clearly establish the claimants were subjected to hazardous noise conditions during the course and scope of their employment, which caused gradual onset hearing loss. The claimants testified in the beginning of their employment (as early as the 1970s) they often went without any hearing protection. As time went on, they were provided hearing protection but it was customary that the employees would not wear it, or not wear the proper equipment. The claimants described the heat and why wearing "double hearing protection" became untenable.
>
> One claimant testified that the noise was similar to standing on the tarmac when a jet engine was in the process of taking off. He conveyed how one would "feel the sound" in their body. He also described how there were frequent times when two giant metal spools

---

[2] PCA's appeal of the similar ruling rendered in favor of Mr. Colton bears docket number 22-410, and its appeal of the similar ruling rendered in favor of Mr. Hyatt bears docket number 22-411. These three cases were consolidated in this court for oral argument.

would hit each other and create an excruciatingly loud high pitched sound.

       The current Safety Manager, . . . was not employed at the time of the retirement of any of the claimants herein. Additionally, while he testified as to the recommendations and standards of the hearing protection at PCA currently, there was no testimony as to what if any penalties there were for employees failing to wear the proper protection. If the custom amongst the employees was the same as during the employment of the claimants, then no amount of procedures would prevent the injury.

       [PCA] also presented a noise hygienist and report of TES. . . . The Court had certain concerns with the way the test was conducted. The paper mill was given advanced notice, the company selected the jobs it wanted noise readings on, and in developing the report[,] the hygienist eliminated the loudest sounds as "anomalies". The test also did not account for those "unusual" but "common situations that the claimants described, such as [a] high pressure water leak, or the paper running out on the metal spool.

    . . . .

       Lastly, the testimony of Dr. Gianoli, is unpersuasive. He opines, that because the first 10 years of exposure to hazardous noise is the most destructive to a person's hearing, the claimants are less susceptible to further hearing loss. After a review of the NIOSH guidelines, the Court finds this reasoning troubling. The guidelines point out, aside from more hearing loss, there are other potential harms that may be caused by the hazardous noise levels that are still being researched, such as early onset dementia.

The WCJ rendered a judgment in favor of Mr. Bos for medical and indemnity benefits, including SEBs in the amount of $68,328.00. This is the equivalent of 104 weeks of benefits beginning October 1, 2018, at a maximum weekly compensation rate of $657.00. The WCJ also concluded that PCA was arbitrary and capricious in failing to authorize Mr. Bos's requests for various medical treatments, SEBs, and vocational rehabilitation services, and it awarded Mr. Bos $8,000.00 in penalties and $15,000.00 in attorney fees.

PCA appeals and asserts the following as assignments of error:

1. The Workers' Compensation hearing officer erred in awarding SEBs to Bos, as he withdrew from the workforce and was receiving social security disability benefits for an unrelated injury during the applicable SEB period and testified that he would not return to full time employment as he did not want to lose his social security disability benefits.

2. The Workers' Compensation hearing officer erred in awarding SEBs to Bos based on Dr. Le[B]ert's recommendation that Bos follow NIOSH noise exposure guidelines if he returned to work, as that recommendation is generally appliable and not causally related to Bos' hearing loss.

3. The Workers' Compensation hearing officer erred in finding that Bos was incapable of performing the job of an "A Operator" at the PCA paper mill between October 1, 2018 and October 1, 2020[,] as a result of Dr. Le[B]ert's NIOSH recommendation.

4. The Workers' Compensation hearing officer erred in awarding penalties and attorneys' fees for failure to initiate vocational rehabilitation services.

5. The Workers' Compensation hearing officer erred in awarding penalties and attorneys' fees for failure to initiate SEBs.

Mr. Bos answers the appeal and seeks additional attorney fees and costs incurred in connection with the appeal.

## STANDARD OF REVIEW

Factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review. In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the fact finder's conclusion was a reasonable one.

*Adams v. Ga. Gulf Lake Charles, LLC*, 17-723, p. 4 (La.App. 3 Cir. 6/27/18), 249 So.3d 1066, 1069-70, *writ denied*, 18-1272 (La. 11/5/18), 255 So.3d 1053 (internal citations omitted).

[T]he issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the

4

testimony. However, where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness's story, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. Nonetheless, this Court has emphasized that the reviewing court must always keep in mind that if the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.

*Stobart v. State, Through Dep't. of Transp. & Dev.*, 617 So.2d 880, 882-83 (La.1993)(internal citations and quotation marks omitted).

## ANALYSIS

*Assignment of Error No. 1*:

PCA does not dispute that Mr. Bos established he developed hearing loss as a result of his employment at the paper mill. Rather, in its first assignment of error, PCA argues that Mr. Bos failed to show that his work injury resulted in a loss of earning capacity because he withdrew from the workforce for reasons unrelated to hearing loss or noise-related work restrictions. PCA relies on *Poissenot v. St. Bernard Parish Sheriff's Office*, 09-2793 (La. 1/9/11), 56 So.3d 170, and also asks this court to reconsider its prior ruling in *Adams*.

In response, Mr. Bos argues that *Adams* is controlling on this issue and should be followed. In *Adams*, this court affirmed an award of SEBs to a claimant with occupational noise-induced hearing loss, and it rejected the defendant's argument that the claimant failed to prove a loss of wage-earning capacity because the claimant retired for reasons unrelated to hearing loss.

The burden of proof with respect to claims for SEBs has been set forth as follows:

5

The Louisiana Supreme Court addressed the standards for proving entitlement to SEB payments in *Clay v. Our Lady of Lourdes Regional Medical Center, Inc.*, 11-1797, p. 4 (La. 5/8/12), 93 So.3d 536, 538-39, as follows:

> The purpose of SEBs is to compensate the injured employee for the wage earning capacity he has lost as a result of his accident. *Poissenot v. St. Bernard Parish Sheriff's Office*, 09-2793 (La. 1/9/11), 56 So.3d 170, 174; *Pinkins v. Cardinal Wholesale Supply, Inc.*, 619 So.2d 52, 55 (La.1993). La. R.S. 23:1221(3)(a) provides that an employee is entitled to receive SEBs if he sustains a work-related injury that results in his inability to earn 90% or more of his average pre-injury wage. Initially, the employee bears the burden of proving, by a preponderance of the evidence, that the injury resulted in his inability to earn that amount under the facts and circumstances of the individual case. *Poissenot*, 56 So.3d at 174; *Banks v. Industrial Roofing & Sheet Metal Works, Inc.*, 96-2840 (La. 7/1/97), 696 So.2d 551, 556. Once the employee's burden is met, the burden shifts to the employer who, in order to defeat the employee's claim for SEBs, must prove, by a preponderance of the evidence, that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in his or the employer's community or reasonable geographic region. La. R.S. 23:1221(3)(c)(i); *Poissenot*, 56 So.3d at 174; *Banks*, 696 So.2d at 551.

> It is also worth noting that this "analysis is necessarily a facts and circumstances one in which the court is mindful of the jurisprudential tenet that worker's compensation law is to be liberally construed in favor of coverage." *Daigle v. Sherwin-Williams Co.*, 545 So.2d 1005, 1007 (La.1989).

*Adams*, 249 So.3d at 1074-75.

In *Smith v. Packaging Corporation of America*, 22-171 (La.App. 3 Cir. 11/30/22), ___ So.3d ___, this court recently considered the same argument advanced by PCA in connection with this assignment of error. *Smith* also involves PCA's appeal of a workers' compensation judgment that awarded SEBs, penalties, and attorney fees in favor of a former paper mill employee, who was also diagnosed by Dr. LeBert with occupational noise-induced hearing loss as a result of his long-term

employment with PCA and/or its predecessors, and who had retired for reasons unrelated to his work injury. In *Smith,* PCA asserted assignments of error nearly identical to those asserted in the instant case, including the argument that this court should reconsider its ruling in *Adams* and find that the claimant's retirement precluded an award of SEBs.

The *Smith* court found *Adams* to be applicable, and it expressly rejected PCA's argument that the claimant's retirement for reasons unrelated to hearing loss eliminated the claimant's entitlement to SEBs. The *Smith* court noted that it was not until Dr. LeBert diagnosed the claimant:

> [W]ith an occupational disease, found him disabled, and restricted his work within NIOSH requirements that the basis for his SEB claim was completed. At that time, [the claimant's] retirement became one directly affected by his disability, and he was properly treated as a person who left work because of an occupational disease—one who has not retired in the traditional sense. Accordingly, we find [the claimant] presented the WCJ with evidence that he was unable to earn wages because of his occupational hearing loss.

*Id.* at __.

For the same reasons expressed in *Smith,* we reject PCA's argument that Mr. Bos is not entitled to SEBs because he retired for reasons unrelated to his work injury, and we find no merit in PCA's first assignment of error.

*Assignment of Error No. 2:*

PCA also argues that the NIOSH-based work restriction that Dr. LeBert placed on Mr. Bos was not causally related to Mr. Bos's hearing loss because it was a universal recommendation that would be made to anyone. Therefore, according to PCA, Mr. Bos failed to prove his entitlement to SEBs.

PCA made this same argument in *Smith*. The *Smith* court disagreed with PCA, and suggested that:

[R]ather than focusing on the nature of the work restriction, the proper focus is whether the restriction does or does not prevent an injured worker from performing his current job or does or does not prevent an injured worker from earning 90 percent of his average weekly wage in the case of an SEB award.

*Id.* at __. In rejecting PCA's argument, the *Smith* court further stated:

The record is equally clear that Dr. LeBert acknowledged his application of the NIOSH noise restrictions is one he would make to the general population of workers at PCA and that not all workers at PCA would develop noise induced hearing loss regardless of the NIOSH noise restriction. Nevertheless, Dr. LeBert testified the NIOSH restriction is a work related restriction he would particularly make for [the claimant] Mr. Smith because he suffered noise related hearing loss. By doing so, Dr. LeBert acknowledged that Mr. Smith was more than a laborer subject to the generalized application of the NIOSH noise restrictions—the application of this restriction to this particular injured individual would prevent further hearing damage.

*Id.* at __.

For the same reasons expressed in *Smith*, we likewise find this assignment of error lacks merit.

*Assignment of Error No. 3*

In its third assignment of error, PCA suggests that Mr. Bos was required, but failed, to establish that the NIOSH restrictions imposed by Dr. LeBert prevented him from performing his job during the SEB payment period (October 1, 2018 through October 1, 2020). Rather, according to PCA, Mr. Bos impermissibly relied on the testimony of PCA's former safety manager, Mr. David Ludolph, regarding the noise conditions in the paper mill because Mr. Ludolph did not provide testimony of the conditions after he left PCA in 2012, and because he was not qualified to testify regarding PCA's compliance with NIOSH after 2012. Instead, PCA relies on the testimony of its expert industrial hygienist, Mr. Christopher Robertson, who, according to PCA, testified that Mr. Bos's former position at PCA was compliant with NIOSH restrictions during the SEB payment period. PCA also takes issue with

8

the WCJ's expressed concerns regarding Mr. Robertson's methodology and opinions.

In response, Mr. Bos argues that he was only required to show prima facie entitlement to SEBs, and that he did so. He notes that Mr. Ludolph confirmed that there were no jobs at the paper mill that would satisfy Dr. LeBert's restriction. Mr. Bos also notes that he was a high-wage earner, making over $100,000.00 per year, and that he was unlikely to find another job making 90% of that amount due to his lack of education, training, or experience in any other job.

In *Smith*, PCA advanced the same argument that it has asserted in connection with this assignment of error. The *Smith* court rejected PCA's argument stating:

> From the outset, we reject the attempt of PCA to impose a separate element of prima facie proof on [the claimant,] namely, that he failed to prove that the work conditions that resulted in his hearing loss were still present during the SEB period. Our review of the law and the jurisprudence fails to find that such a burden has been imposed on a worker as an element of prima facie proof.

*Id.* at __. The *Smith* court went on to find that there was sufficient evidence in the record to support a factual finding that the claimant established his prima facie burden of proof based on Mr. Ludolph's and the claimant's testimony, and therefore, the burden of proof shifted to PCA to prove:

> (1) the existence of a suitable job within claimant's physical capabilities and within claimant's or the employer's community or reasonable geographic region;
>
> (2) the amount of wages that an employee with claimant's experience and training can be expected to earn in that job; and
>
> (3) an actual position available for that particular job at the time that the claimant received notification of the job's existence.

*Id.* at __ (quoting *Banks v. Indus. Roofing & Sheet Metal Works, Inc.*, 96-2840, p. 10-11 (La. 7/1/97), 696 So.2d 551, 557). The *Smith* court then noted the WCJ's discretion regarding accepting or rejecting expert testimony, as well as the undisputed testimony that PCA never offered the claimant any job after he made his demand for SEBs, and that no attempt was made to identify any available jobs that complied with Dr. LeBert's restrictions and pay requirements.

Given the similar testimony in the instant case, we likewise conclude that the record supports a finding that Mr. Bos satisfied his prima facie entitlement to SEBs, and that PCA failed to satisfy its burden. Therefore, this assignment of error also lacks merit.

### *Assignments of Error Nos. 4 and 5*

PCA also challenges on appeal the WCJ's award of penalties for PCA's failure to initiate vocational rehabilitation services and/or payment of SEBs. As in *Smith*, PCA suggests that La.R.S. 23:1201 is not directed at an employer's vocational-rehabilitation obligation provided by La.R.S 23:1226, and/or that it reasonably disputed Mr. Bos's demand for vocational rehabilitation services and payment of SEBs.

In response, Mr. Bos notes that, following Dr. LeBert's recommendations, he made multiple demands for the approval of hearing aids, a follow-up audiogram, initiation of SEB payments, and vocational rehabilitation services; yet, despite PCA's continuing duty to investigate Mr. Bos's claim, PCA continuously ignored his demands, did nothing to reasonably controvert Mr. Bos's claim, and did not obtain a second medical opinion until a year and half after Dr. LeBert rendered his opinion and recommendations. Therefore, Mr. Bos argues, the $8,000.00 maximum amount of penalties contemplated by La.R.S. 23:1201(F) was appropriate. Mr. Bos

further argues that an award of penalties and attorney fees for failing to initiate vocational rehabilitation services is proper in accordance with *Lollis v. Shaw Global Energy Services*, 07-395 (La.App. 3 Cir. 10/3/07), 966 So.2d 1118, and that PCA's misplaced reliance on its erroneous interpretation of the law and reliance on the dissent in *Adams* subjects it to attorney fees.

> An employer is subject to penalties and attorney fees should it fail to reasonably controvert an employee's claim. La.R.S. 23:1201(F); *see also Leger v. A-1 Nursing Registry*, 98-1731 (La.App. 3 Cir. 4/28/99), 737 So.2d 142, *writ denied*, 99-1555 (La. 9/24/99), 749 So.2d 633. The standard of review for whether penalties and attorney fees were appropriately assessed in a workers' compensation case is that of manifest error. *See Bennett v. Pilgrim's Pride*, 07-753 (La.App. 3 Cir. 12/12/07), 972 So.2d 423, *writ denied*, 08-103 (La. 3/7/08), 977 So.2d 907.

*Smith*, __ So.3d at __.

After reviewing the record, we conclude, as we did in *Smith*, that given Mr. Bos' multiple requests for medical treatment, testing, and SEBs, it is unnecessary to reach PCA's argument regarding penalties for failing to initiate vocational rehabilitation services. We further conclude that "reliance on an erroneous interpretation of a law subjects the employer to penalties and attorney fees," and we find no abuse of discretion in connection with the WCJ's award of penalties in this case. *Smith*, *Id.* at __.

*Mr. Bos's Answer to Appeal*

In his answer to PCA's appeal, Mr. Bos seeks an additional award for attorney fees incurred on appeal. "Generally, when an award for attorney's fees is granted [by the WCJ], additional attorney's fees are proper for work done on appeal [so as] to keep the appellate judgment consistent with the underlying judgment." *Wilczewski v. Brookshire Grocery Store*, 08-718, p. 18 (La.App. 3 Cir. 1/28/09), 2

So.3d 1214, 1226, *writ denied*, 09-456 (La. 4/13/09), 5 So.3d 170.  Therefore, we award Mr. Bos $5,000.00 in additional attorney fees.

## DECREE

For the reasons set forth above, we affirm the judgment of the workers' compensation judge.  In addition, attorney fees in the amount of $5,000.00 are awarded in favor of claimant, Clarence Bos, and against Packaging Corporation of America, for attorney fees incurred on appeal.  All costs of this proceeding are assessed to appellant, Packaging Corporation of America.

**AFFIRMED.**