PENZATO, J.
In this workers' compensation matter, claimant, Nanette Ziegler, appeals the granting of a motion for summary judgment in favor of Slidell Memorial Hospital. For the following reasons, we reverse and remand for further proceedings.
FACTS AND PROCEDURAL HISTORY
On June 3, 2015, Ms. Ziegler, a nursing assistant who was employed by Slidell Memorial Hospital (Employer) at the time, injured her left shoulder while repositioning a patient. On July 8, 2015, she underwent surgery performed by Dr. Jason Rolling for a rotator cuff tear caused by *567 the incident. After surgery, Ms. Ziegler began a course of physical therapy. On September 8, 2015, a vocational rehabilitation assistant, Brienne Frey, was assigned to assist Ms. Zeigler in returning to work. On October 30, 2015, Ms. Zeigler and Ms. Frey met with Dr. Rolling for a rehabilitation conference. At that time, Dr. Rolling indicated that while Ms. Zeigler was not quite ready to go back to work, he thought it was reasonable, following a month of more intensive therapy, for her to return to a modified-duty job. A second rehabilitation conference was held on January 25, 2016, at which time Dr. Rolling indicated that Ms. Zeigler "may be suitable for some types of work."
Following the January 25, 2016 conference, Ms. Frey began conducting labor market surveys to locate potential jobs for Ms. Zeigler. Additionally, Ms. Frey scheduled a second medical opinion evaluation for Ms. Zeigler with Dr. Paul van Deventer in order to determine Ms. Zeigler's physical limitations. Dr. van Deventer evaluated Ms. Zeigler on May 3, 2016, and noted that she had reached her point of maximum medical improvement in regards to her work injury. Dr. van Deventer indicated that with appropriate accommodations, Ms. Zeigler should be able to return to a medium level job. Between February 29, 2016 and June 20, 2016, Ms. Frey identified potential jobs for Ms. Zeigler and sent the job descriptions to Dr. Rolling for his approval.
On July 1, 2016, Employer terminated Ms. Zeigler's wage benefits. On August 1, 2016, Ms. Zeigler filed a Disputed Claim for Compensation, indicating a bona-fide dispute as to the termination of her wage benefits. Employer filed a motion for summary judgment on December 9, 2016, seeking dismissal of Ms. Zeigler's claim for improper termination of indemnity benefits on the grounds that it had located for Ms. Zeigler several suitable employment positions, approved by her physician of choice, located in her geographical area, and available at the time of notice, that would pay her more than ninety percent (90%) of her pre-accident wages. A hearing was held on January 18, 2017, and the matter was taken under advisement. On January 27, 2017, the workers' compensation judge issued written reasons and rendered an order granting Employer's motion for partial summary judgment.[1] On April 25, 2017, the workers' compensation judge signed an order designating the January 27, 2017 order as a final judgment, and dismissing Ms. Zeigler's claims. This appeal followed.
ASSIGNMENT OF ERROR
Ms. Zeigler asserts that the workers' compensation judge erred in granting the motion for summary judgment. In addition, she asserts that the workers' compensation judge erred in finding that she failed to carry her burden of proving a "sham" rehabilitation.
*568 LAW AND DISCUSSION
After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. Code Civ. Pro. art. 966A(3). The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of every action. See La. Code Civ. Pro. art. 966A(2). In determining whether summary judgment is appropriate, appellate courts review evidence de novo under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. Reynolds v. Bordelon , 2014-2371 (La. 6/30/15), 172 So.3d 607, 610.
A summary judgment may be rendered or affirmed only as to those issues set forth in the motion under consideration by the court at that time. La. Code Civ. Pro. art. 966F. The burden of proof is on the mover. See La. Code Civ. Pro. art. 966D(1). However, if the mover will not bear the burden of proof at trial on the matter that is before the court on the motion, the mover's burden does not require that all essential elements of the adverse party's claim, action, or defense be negated. Instead, the mover must point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, the adverse party must produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. If the adverse party fails to meet this burden, there is no genuine issue of material fact, and the mover is entitled to summary judgment as a matter of law. La. Code Civ. Pro. art. 966D(1); Bryant v. Premium Food Concepts, Inc. , 2016-0770 (La. App. 1 Cir. 4/26/17), 220 So.3d 79, 81-82, writ denied , 2017-0873 (La. 9/29/17), 227 So.3d 288, 2017 WL 4417510. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Id. at 82.
The purpose of Supplemental Earnings Benefits (SEBs) is to compensate the injured employee for the wage earning capacity she has lost as a result of her accident. Pinkins v. Cardinal Wholesale Supply, Inc. , 619 So.2d 52, 55 (La. 1993). An employee is entitled to receive SEBs if she sustains a work-related injury that results in her inability to earn 90% or more of her average pre-injury wage. See La. R.S. 23:1221 (3)(a) ; Poissenot v. St. Bernard Par. Sheriff's Office , 2009-2793 (La. 1/9/11), 56 So.3d 170, 174. Initially, the employee bears the burden of proving, by a preponderance of the evidence, that the injury resulted in her inability to earn that amount. If the employee satisfies that burden of proof, the burden shifts to the employer to prove, by a preponderance of the evidence, that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in her or the employer's community or reasonable geographic location. La. R.S. 23:1221(3) (c)(i) ; Poissenot , 56 So.3d at 174.
In this case, it is undisputed that Ms. Zeigler is unable to return to her pre-injury employment as a nursing assistant. Thus, the only question properly before this court is whether Employer carried its burden of proving that there are jobs available to Ms. Zeigler within her physical capabilities and geographic region that would enable her to earn 90% or more of her pre-injury wage. See *569 Banks v. Indus. Roofing & Sheet Metal Works, Inc. , 96-2840 (La. 7/1/97), 696 So.2d 551, 556.
In Banks, the Louisiana Supreme Court instructed that an employer may discharge its burden of proving job availability by establishing, at a minimum, the following, by competent evidence:
(1) the existence of a suitable job within claimant's physical capabilities and within claimant's or the employer's community or reasonable geographic region;
(2) the amount of wages that an employee with claimant's experience and training can be expected to earn in that job; and
(3) an actual position available for that particular job at the time that the claimant received notification of the job's existence.
Banks , 696 So.2d at 557. The Louisiana Supreme Court further explained that "suitable job" means "a job that claimant is not only physically capable of performing, but one that also falls within the limits of claimant's age, experience, and education, unless, of course, the employer or potential employer is willing to provide any additional necessary training or education." Id.
At the hearing on the motion for summary judgment, Employer introduced into evidence Ms. Frey's deposition, along with labor market survey worksheets prepared by Ms. Frey, in support of its contention that it had located viable jobs sufficient to terminate Ms. Zeigler's SEBs under the law.[2] Employer contended that Ms. Frey located ten different positions that were within or below the classification and limitation range defined by Dr. Rolling on December 1, 2015, and that Ms. Frey sought and secured Dr. Rolling's approval of all ten jobs, and provided notice of such approval to Ms. Zeigler directly. At the outset, in determining whether Employer discharged its burden of proving job availability at the time the SEBs were terminated on July 1, 2016, we note that the positions at Beacon Behavioral Health and American Insurance Brokers, Inc.[3] were not approved by Dr. Rolling until August 3, 2016, and therefore cannot support the termination of benefits prior thereto. Ms. Frey testified that on March 7, 2016, positions at MedVet Medical & Cancer Center for Pets (MedVet) and PEC Premier Safety (PEC) were approved by Dr. Rolling. However, Dr. Rolling appears to have qualified his certification for the position at MedVet, and made no determination as to the position at PEC, noting that Ms. Zeigler "may have trouble with the lifting" required at those positions. Ms. Frey testified that on June 15, 2016, she advised Ms. Zeigler by e-mail that the MedVet position was still available. Ms. Frey also testified that she received Dr. Rolling's approval of the remaining six positions on June 20, 2016, at which time she determined that three were still available-those at Honda of Slidell, Rotolo Consultants, Inc., and Animal Health Clinic.[4] Ms. Frey notified Ms. *570 Zeigler through an e-mail dated June 20, 2016 of Dr. Rolling's approval of the jobs and the availability of same.
In opposition to the motion for summary judgment, Ms. Ziegler submitted her affidavit. She attested therein that she did not believe that the Animal Health Clinic job was suitable for her "as there was an issue with her ability to lift and handle animals and the job did not provide health care benefits."[5] Moreover, it does not appear that the position at Animal Health Clinic, which paid $9.00 per hour for a forty-hour work week, enabled her to earn 90% or more of her pre-injury wage.
The average weekly wage for an injured employee who is paid an hourly wage is determined by applying La. R.S. 23:1021(13)(a), which provides, in pertinent part:
(i) If the employee is paid on an hourly basis and the employee is employed for forty hours or more, his hourly wage rate multiplied by the average actual hours worked in the four full weeks preceding the date of the accident or forty hours, whichever is greater; or
(ii) If the employee is paid on an hourly basis and the employee was offered employment for forty hours or more but regularly, and at his own discretion, works less than forty hours per week for whatever reason, then, the average of his total earnings per week for the four full weeks preceding the date of the accident....
The evidence indicates that Ms. Zeigler was considered a full time employee, and that she was paid on an hourly basis. Her regular rate per hour was $10.94; her overtime rate per hour was $16.44. She worked thirty-six hours per week for the four weeks prior to her injury. Her gross weekly wages were reported as follows: week # 1 $402.24; week # 2 $397.44; week # 3 $400.44; week # 4 $399.24. There was no evidence presented as to how her gross weekly wages were calculated or as to why they exceeded $10.94 per hour for thirty-six hours ($393.84). Further, there was no evidence introduced as to whether Ms. Zeigler was offered employment for forty hours or more but worked less than that at her own discretion, or whether she was entitled to the forty-hour presumption in calculating her average weekly wage.[6] See, e.g., Guillory v. Bofinger's Tree Serv., 2006-0086 (La. App. 1 Cir. 11/3/06), 950 So.2d 682, 689.
In connection with the MedVet position, in addition to Dr. Rolling's qualified approval that Ms. Zeigler had "clearance to try" same, the position paid "at least $9.00 per hour," depending on experience, and thus it does not appear that this position enabled her to earn 90% of her pre-injury wage. With regard to the position at Honda of Slidell, Ms. Zeigler attested that she called to schedule an interview, but never received a return phone call. She further attested that she called Rotolo Consultants, Inc. several times and did not ever receive a return phone call. There is no evidence as to the manner in which Ms. Frey determined that the positions at Honda of Slidell and Rotolo Consultants, Inc. were available at the time she notified Ms. Zeigler of their existence. The credibility of a witness or affiant is a question of fact. In deciding a motion for summary *571 judgment, the court must assume that all of the affiants are credible. Dimattia v. Jackson Nat. Life Ins. Co. , 2004-1936 (La. App. 1 Cir. 9/23/05), 923 So.2d 126, 130.
Based upon the entirety of the evidence, we find that genuine issues of material fact remain as to whether Employer properly terminated Ms. Zeigler's SEBs on July 1, 2016, precluding summary judgment. Accordingly, after de novo review, we find that Employer failed to meet its burden of proof on the motion for summary judgment. Having found that there is merit in Ms. Zeigler's first assignment of error, we pretermit a discussion of her second assignment of error.[7]
CONCLUSION
The summary judgment granted by the Workers' Compensation Judge that dismissed Ms. Zeigler's claim is reversed and this matter is remanded for further proceedings. Costs of this appeal are assessed to Slidell Memorial Hospital.
REVERSED AND REMANDED.

The basis upon which the workers' compensation judge identified Employer's motion as a motion for partial summary judgment in the January 27, 2017 order is unclear. Employer sought dismissal of Ms. Zeigler's entire claim, and the April 25, 2017 order dismissed the matter entirely and referenced the January 27, 2017 order as being having been rendered on "Summary Judgment Motion."
Also included in the order were the workers' compensation judge's findings that: (1) claimant was not entitled to Supplemental Earnings Benefits (SEBs) as of July 28, 2016, which appears to be inconsistent with Ms. Zeigler's claim and the relief sought by Employer in the motion for summary judgment, both of which pled the date of July 1, 2016; and (2) that Ms. Zeigler did not carry her burden of proof that Employer provided a "sham" rehabilitation.

We recognize that items attached to a deposition, which are properly identified and verified, may be considered on summary judgment when the deposition and its attachments are introduced. See Boland v. West Feliciana Parish Police Jury , 2003-1297 (La. App. 1 Cir. 6/25/04), 878 So.2d 808, 814, writ denied, 2004-2286 (La. 11/24/04), 888 So.2d 231.

We note that the position at American Insurance Brokers, Inc. was considered viable by the workers' compensation judge.

The workers' compensation judge considered two of the three unavailable positions, Brand Direct Health and Ampirical Solutions, LLC, as viable although by the time Ms. Frey received approval of the jobs by Dr. Rolling and advised Ms. Zeigler of same, the positions had been filled.

The Animal Health Care clinic position was not considered as viable or appropriate by the workers' compensation judge.

It appears the workers' compensation judge concluded that Ms. Zeigler was entitled to the forty-hour presumption, as the written reasons stated that in order for defendant to carry its burden of proof to terminate SEBs, it must produce the availability of jobs at forty hours per week that pay at least 90% of $10.94 per hour, which is $9,846 per hour.

We note, however, that the issue of a "sham" rehabilitation was not the subject of the pending motion for summary judgment or a cross-motion for summary judgment by Ms. Zeigler, but was raised by way of argument. A summary judgment may be rendered or affirmed only as to those issues set forth in the motion under consideration by the court at that time. La. Code Civ. Pro. art. 966F.