CHUTZ, J.
Claimaint-appellant, Jerry Neal, Jr.,[1] appeals the judgment of the Office of Workers' Compensation (OWC), dismissing his claims for indemnity benefits against his former employer, St. Tammany Parish Hospital (STPH). We affirm.
*161 BACKGROUND
The parties stipulated that Mr. Neal was an employee of STPH on or about October 24, 2014. He was involved in an accident arising out of his employment and in the course and scope of his employment. It is undisputed that, at the time of his injury, Mr. Neal was trying to lift a heavy patient as part of his job duties as a radiology technician. As a result of an accident on October 24, 2014, Mr. Neal sustained an injury to his lumbar spine at the L5-S1 level. Mr. Neal was provided modified-duty work by STPH after the October 24, 2014 accident for which he earned at least 90 percent of his pre-injury wage.
Mr. Neal subsequently returned to work at STPH in April 2015 in a modified-duty position in the radiology department, working within his medical restrictions. In June 2015, Mr. Neal returned to full duty as a radiology technician without any medical restrictions. On September 15, 2015, Mr. Neal was involved in another accident arising out of his employment, when he was picking up a patient and felt significant pain. As a result of the September 15, 2015 accident, Mr. Neal aggravated his lumbar spine condition at the L5-S1 level. He was again provided with modified-duty work after the September 15, 2015 accident at which he again earned at least 90 percent of his pre-injury wages.
On March 4, 2016, Mr. Neal filed disputed-claim-for-compensation forms with the OWC, seeking temporary total disability (TTD) benefits or, alternatively, supplemental earning benefits (SEB). He also requested back payments for indemnity benefits, costs, penalties, attorney fees, and interest for STPH's alleged failure to timely institute indemnity benefits.
A hearing on the merits of Mr. Neal's claims was held on July 20, 2017, at which testimonial and documentary evidence was adduced. On October 13, 2017, the OWC issued a judgment, which determined, among other things, that Mr. Neal had failed to carry his burden of proof on his entitlement to either TTD or SEB indemnity benefits. As such, the OWC concluded that STPH did not owe any penalties or attorney fees. Mr. Neal appealed.
DISCUSSION
To support his claims of entitlement to indemnity benefits, the deposition testimony of Dr. Mohammad Almubaslat, the neurosurgeon who treated Mr. Neal after both accidents, was admitted at the hearing. At his deposition on May 26, 2016, Dr. Almubaslat stated that Mr. Neal was restricted from engaging in any work after September 15, 2015, due to his functional limitations from the back injury. But the record is devoid of any evidence showing that either Mr. Neal or Dr. Almubaslat provided STPH, or its workers' compensation insurer, HSLI, with notice of the work restriction. The only evidence provided to STPH or HSLI after the September 15, 2015 work injury showing that Mr. Neal had any medical restrictions placed on his ability to work was a form, dated September 16, 2015, from the physician/nurse practitioner who treated Mr. Neal on the day that he sustained the second work-related accident. According to the restrictions set forth in the form, Mr. Neal was not permitted to lift, carry, push, or pull anything over 10 pounds until "MRI/sees neurosurgeon."
Despite Dr. Almubaslat's May 26, 2016 deposition testimony stating that Mr. Neal had been restricted from work after the September 15, 2015 accident, and the return-to-work slip provided to STPH, which commenced on the day after Mr. Neal's second work-related injury and expressly limited the work restrictions until Mr. Neal received additional medical treatment, Mr. Neal acknowledges that he requested *162 work and was given a sedentary, modified-duty position answering phones for STPH in the radiology department.[2] On October 14, 2015, Mr. Neal informed STPH Human Resources Specialist, Ellen Hobgood, he was going to have neck surgery for an unrelated, non-work injury. A return-to-work evaluation form, dated October 14, 2015 and signed by Dr. Almubaslat, was provided to STPH, indicating that Mr. Neal was unable to work due to a surgery scheduled for October 20, 2015. A "Certification of Health Care Provider" form, associated with the Family and Medical Leave Act of 1993 (FMLA), provided to the U.S. Department of Labor, and signed by both Dr. Almubaslat and Mr. Neal on November 5, 2015, indicated that Mr. Neal's anticipated incapacity for the neck surgery was from October 20, 2015 through January 20, 2016, and that he was on full work restrictions until January 20, 2016.
According to Ms. Hobgood, Mr. Neal was placed on Non-FMLA to allow him to have the neck surgery. She said that she explained to Mr. Neal that he had utilized all of his FMLA-leave and, therefore, his position would not be protected by the FMLA during his absence. But Non-FMLA leave was available to Mr. Neal, which allowed him to nevertheless remain an employee of STPH with all his benefits.
Ms. Hobgood sent a letter, dated November 5, 2015, to Mr. Neal advising him that his requested Non-FMLA leave had been approved, commencing on October 14, 2015, which was the first day that he missed work due to the neck injury. The letter expressly advised Mr. Neal, "Your Non-FMLA leave of absence is only approved for the length of time specified by your treating physician, not to be extended beyond a Non-FMLA expiration date of 01/05/2016." The letter further apprised Mr. Neal:
Please note: A Non-FMLA leave of absence does not provide job protection. The privilege of returning to work at STPH from a Non-FMLA leave is subject to conditions and the availability of positions prevailing at the time of your release to return to employment work.
Once released, it is your responsibility to take immediate steps to formally apply for any vacant , posted positions for which you qualify. If you are not successful in obtaining a position once released by your physician, your employment with [STPH] will end and you will be officially separated.
Also note, A Return to Work Evaluation form must be completed by your physician and returned to me in Human Resources before you may return to work and prior to the expiration date of your approved Non-FMLA.
Throughout your Non-FMLA leave, it remains your responsibility to notify Human Resources of your anticipated release date, including if you have no plans to return.
Ms. Hobgood stated that she did not hear back from Mr. Neal until January 4, 2016. She testified that Mr. Neal indicated he was not released to return to work and would most likely need another neck operation. Ms. Hobgood recalled that when Mr. Neal said that he was not released to return to work because of his neck, he did not mention anything about his back. She subsequently sent a termination letter to Mr. Neal explaining that as of January 5, 2016, his Non-FMLA leave had expired *163 and that because he had "not been medically released per [their] phone conversation yesterday," his employment had officially been separated.
The deposition testimony of HSLI Senior Claims Consultant, Tami Bartlett, was admitted into evidence. Ms. Bartlett testified that she did not hear anything from or about Mr. Neal from the time he went out for neck surgery until January 2016. Mr. Neal contacted Ms. Bartlett saying he could not work and she requested documentation from Dr. Almubaslat. When she received Dr. Almubaslat's January 22, 2016 letter restricting Mr. Neal from any work due to his back injury, she requested a second medical opinion. She noted that Mr. Neal had not received any medical treatment for his back injury since October 2015 and had not been working so she did not understand why he was no longer able to work in the sedentary, modified-duty position he had successfully done prior to the neck surgery.
During his May 26, 2016 deposition, after Dr. Almubaslat had been apprised for the first time of the sedentary, modified-duty work that STPH had made available to Mr. Neal immediately after the September 15, 2015 accident, he stated, "My, my - and he could have [worked the sedentary, modified-duty position].... My restriction was always for physical activity and for prolonged ... sitting." Dr. Almubaslat also indicated that he "still would probably ... have restricted the hours" that Mr. Neal could have worked at the sedentary, modified-duty position.
TTD Indemnity Benefits:
Temporary total disability means the inability to engage in any gainful occupation, whether or not it is the same or one similar to that in which the employee was customarily engaged when injured. La. R.S. 23:1221(2)(a). A workers' compensation claimant seeking temporary total disability benefits bears the burden of proving, by clear and convincing evidence, his inability to engage in any type of employment. See Crow v. St. Tammany Par. Gov't , 2016-0200 (La. App. 1st Cir. 12/22/16), 210 So.3d 466, 468-69, writ denied. 2017-0122 (La. 3/13/17), 216 So.3d 807.
Temporary total disability can be proven by medical and lay testimony. The fact finder must weigh all the evidence, medical and lay, in order to determine if the claimant has met his burden of proof. The claimant must provide objective, expert testimony as to his medical condition, symptoms, pain, and treatment, in addition to personal testimony, in order to meet the clear and convincing evidence standard.
Whether a claimant is entitled to TTD indemnity benefits is a factual finding and, hence, subject to the manifest error or clearly wrong standard of appellate review. This factual finding by OWC should be given great weight and should not be overturned absent manifest error. See New Line Envtl. & Canal HR v. Davis , 2015-1885 (La. App. 1st Cir. 10/7/16), 205 So.3d 921, 925, writ denied, 2016-1996 (La. 12/16/16), 211 So.3d 395. In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the fact finder's conclusion was a reasonable one. Seal v. Gaylord Container Corp. , 97-0688 (La. 12/02/97), 704 So.2d 1161, 1164.
We find that a reasonable factual basis exists for OWC's conclusion that Mr. Neal was not entitled to TTD indemnity benefits from January 4, 2016 through May 27, 2016. Even Dr. Almubaslat, his treating physician, indicated that Mr. Neal was capable of working the sedentary, modified-duty position that he had actually worked from September 16, 2015 through *164 October 14, 2015. Mr. Neal provided no expert medical evidence to the contrary. Mr. Neal's reliance on Dr. Almubaslat's deposition testimony, indicating that the physician had restricted Mr. Neal from working after the September 15, 2015 accident, was subsequently qualified by Dr. Almubaslat and, more importantly, by Mr. Neal himself since he acknowledged that he successfully worked from September 16, 2015 until he voluntarily left to have surgery on October 14, 2015, for an injury that was not work-related and for which he, therefore, was not entitled to workers' compensation TTD indemnity benefits.
We find no merit in Mr. Neal's assertion that the OWC legally erred because it imposed an obligation on him to inform Dr. Almubaslat of a job that he no longer had by the time he saw the neurosurgeon on January 22, 2016. To obtain TTD indemnity benefits, Mr. Neal was required to demonstrate his inability to engage in any gainful occupation or work including positions other than as a radiology technologist. This he failed to do since Dr. Almubaslat testified that his letter restricting Mr. Neal from work was "in the light that he was going back as a radiology [technician]." Given Mr. Neal's acknowledgment that he worked in the sedentary, modified-duty position immediately after the September 15, 2015 accident; the lack of medical evidence supporting any change in his medical condition as of January 4, 2016, the last day of his non-FMLA leave; and Dr. Almubaslat's testimony qualifying his work restrictions for Mr. Neal's return to employment on January 22, 2016, the OWC was not manifestly erroneous in concluding that Mr. Neal failed to sustain his burden of proof by clear and convincing evidence. Accordingly, there was no error in the OWC's dismissal of Mr. Neal's claims for TTD indemnity benefits from January 4, 2016 through May 27, 2016.
SEB Indemnity Benefits:
The purpose of SEB indemnity benefits is to compensate the injured employee for the wage earning capacity he has lost as a result of his accident. Pinkins v. Cardinal Wholesale Supply, Inc. , 619 So.2d 52, 55 (La. 1993). An employee is entitled to receive SEB indemnity benefits if he sustains a work-related injury that results in his inability to earn 90 percent or more of his average pre-injury wage. See La. R.S. 23:1221 (3)(a)(i). Initially, the employee bears the burden of proving by a preponderance of the evidence that the injury resulted in his inability to earn that amount. Ziegler v. Slidell Mem'l Hosp. , 2017-0671 (La. App. 1st Cir. 11/2/17), 236 So.3d 565, 568. It is only when the employee overcomes this initial step that the burden shifts to the employer to prove, by a preponderance of the evidence, that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in his or the employer's community or reasonable geographic location. La. R.S. 23:1221(3) (c)(i) ; Poissenot v. St. Bernard Par. Sheriff's Office , 2009-2793 (La. 1/9/11), 56 So.3d 170, 174. Whether a claimant has met his initial burden of showing entitlement to SEB is a factual finding and, therefore, subject to the manifest error or clearly wrong standard of appellate review. See Poissenot , 56 So.3d at 174 (citing Seal , 704 So.2d at 1166 ).
A reasonable factual basis also exists for the OWC's conclusion that Mr. Neal failed his burden of proving entitlement to SEB indemnity benefits from May 27, 2016 through December 12, 2016.[3] As *165 the OWC judge noted, after the September 15, 2015 accident:
claimant was provided a modified job within the restrictions that arose from his work-related accident. Then, claimant voluntarily stopped working at that modified job to have [neck] surgery not related to any job injury with [STPH]. When claimant ceased to work at the modified job with his employer, it was not for any reason due to that work-related accident.
Thus, Mr. Neal failed to sustain his burden of proving that it was the work-related injury that resulted in his inability to earn 90 percent of his pre-injury wages. See Poissenot , 56 So.3d at 176 (noting that, implicit in claimant's burden of proof under La. R.S. 23:1221(3), is a showing that the injury, and not some other cause, resulted in his inability to retain his pre-injury job).
The OWC's finding that Mr. Neal's voluntary cessation from working the sedentary, modified-duty position, answering phones in STPH's radiology department was the cause of his inability to retain his pre-injury job is amply supported by the evidence and, therefore, not manifestly erroneous or clearly wrong. As such, we find no error in the dismissal of Mr. Neal's claim for SEB indemnity benefits from May 27, 2016 through December 12, 2016, because he failed to meet his burden of proof.
DECREE
Because reasonable factual bases exist for the dismissal of Mr. Neal's alternative claims for TTD and SEB indemnity benefits against defendant-appellee, St. Tammany Parish Hospital, the OWC's judgment is affirmed. Appeal costs are assessed against claimant-appellant, Jerry Neal.
AFFIRMED.

Although the original pleading refers to claimant as "Jerry Neal[,] Sr., he subsequently amended his pleading to correctly identify himself as "Jerry Neal, Jr."

It is undisputed that Mr. Neal was provided his full wages in the sedentary, modified-duty position.

It is undisputed that on December 13, 2016, Mr. Neal underwent a L5-S1 TLIF surgery on his back and that, as a result, he began receiving TTD indemnity benefits, which he continued to receive as of the date of the hearing.