^MCDONALD, J.
Larry Harrison appeals a judgment in favor of A.K. Warehouse Inc. (A.K. Warehouse), which found that he was overpaid workers’ compensation benefits, that A.K. Warehouse was entitled to a credit against any future indemnity obligations, that Mr. Harrison was not entitled to supplemental earnings benefits, and that he did not prove entitlement to penalties and attorneys’ fees. We affirm.
Mr.. Harrison began working for A.K. Warehouse on February 23, 2000, as a warehouseman. He was hired as a full-, time employee and was paid $5.50 per hour plus overtime. He only worked one full week before he was injured. On March 8, 2000, Mr. Harrison was injured in an automobile accident while in the course and scope of employment. A.K. Warehouse paid benefits to Mr. Harrison in the amount of $165.01 per week, starting *798 March 8, 2000, based on an average weekly-wage of $247.51.
Mr. Harrison saw Dr. Thad Broussard, an orthopedic surgeon, on March 14, 2000, complaining of neck and low back pain as a result of the automobile accident. Mr. Harrison had seen Dr. Broussard previously for a low back injury due to a welding accident. He saw Dr. Broussard for his automobile injury 18 times up until December 30, 2002, after which time a functional capacity evaluation was done and Dr. Broussard released Mr. Harrison to return to work with restrictions. In August of 2001, Dr. Broussard signed off on a number a jobs presented to him by the vocational rehabilitation counselor, finding that Mr. Harrison could perform those jobs. On September 10 2001, A.K. Warehouse’s insurer sent notice to Mr. Harrison that his doctor had approved jobs that paid 90% of his pre-accident average weekly wage; thus, they were terminating his benefits.
|aMr. Harrison filed a disputed claim for compensation, asserting that he was unable to work and asking that disability benefits be reinstated. He asserted that he believed benefits were payable in the amount of $165.01 per week, based on an average weekly wage of $247.50. A.K. Warehouse filed an answer, asserting that it was .entitled to a credit for payments made to Mr. Harrison due to the miscalculation of his average weekly wage; that Mr. Harrison’s actual wage calculation, using a forty hour week, would be $220.00 per week with a weekly compensation rate of $146.67; that Mr. Harrison had initially been paid $185.62 per week; and, thus, he was overpaid $38.95 for approximately 65 weeks (a total of $2,531.75); that his compensation rate was changed to $165.01 and remained at that rate until benefits were terminated in September 2001 (approximately 8 weeks of overpayment of $18.34 or $146.72); and that the employer and insurer were entitled to a credit for the overpayment of $2,678.47 erroneously made to Mr. Harrison.[1]
At trial, the parties stipulated that Mr. Harrison was employed by A.K. Warehouse on March 8, 2000 at $5.50 per hour; that he had an accident in the course and scope of his employment; and that indemnity benefits were paid at the rate of $185.62 from the date of the accident until August 27, 2001, at which time his payments were reduced to $165.01 until September 10, 2001.
After trial on the merits, the workers’ compensation judge ruled in favor of A.K. Warehouse and against Mr. Harrison, determining that Mr. |4Harrison’s average weekly wage was $220.00 based on a 40-hour work week and a $5.50 per hour wage rate; that defendants were entitled to a credit of $2,996.35 against any future indemnity obligation, which represented the overpayment of benefits from March 8, 2000, through September 10, 2001; that Mr. Harrison was not entitled to supplemental ' earnings benefits as the employer/insurer found jobs within his geographical area that were within the restrictions imposed by his treating physician and that paid at least 90% of his pre-injury wages; and that Mr. Harrison did not sustain his burden of proving entitlement to penalties and attorneys’ fees.
Mr. Harrison appeals that judgment. He assigns as error the workers’ compen *799 sation judge’s finding that his average weekly wage at the time of his March 8, 2000 accident was $220.00, and the finding that he was not entitled to supplemental earnings benefits.
THE STANDARD OF REVIEW
In a workers’ compensation case, the appellate court’s review of fact is governed by the manifest error or clearly wrong standard. Freeman v. Poulan/Weed Eater, 93-1530 (La.1/14/94), 630 So.2d 733, 737. Where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989).
ASSIGNMENT OF ERROR NO. 1
In this assignment of error, Mr. Harrison asserts that his average weekly wage was $356.13, rather than $220.00. He argues that he was paid $5.50 an hour with overtime and was told that he would be working 52 to 60 hours per week, Monday through Saturday. His first paycheck covered his first two days on the job, for the week of February 18, 2000 to February 24, | r2000, was for 18 hours, and totaled $99.00. His second paycheck, for February 25, 2000, to March 2, 2000, was for 56.5 hours and totaled $356.13. That was the only full week Mr. Harrison worked at A.K. Warehouse before his accident. His actual work hours are:
Week one:
2/23 8.5
2/24 9.5
Week two:
2/25 sick
2/26 sick
2/28 sick
2/29 sick
3/1 9.0
3/2 9.0
Week three:
3/3 8.5
3/4 7.25
3/6 11.5
3/7 11.75
3/8 8.5 (date of accident)
3/9 9
Week four:
3/15 10
Louisiana Revised Statute 23:1021(10) provides:
(10) “Wages” means average weekly wage at the time of the accident. The average weekly wage shall be determined as:
(a) Hourly wages.
(i) If the employee is paid on an hourly basis and the employee is employed for forty hours or more, his hourly wage rate multiplied by the average actual hours worked in the four full weeks preceding the date of the accident or forty hours, whichever is greater; or
(11) If the employee is paid on an hourly basis and the employee was offered employment for forty hours or more but regularly, and at his own discretion, works less than forty hours per week for whatever reason, then, the average of his total earnings per week for the four full weeks preceding the date of the accident; or
(iii) If the employee is paid on an hourly basis and the employee is a parttime employee, his hourly wage rate | (¡multiplied by the average actual hours worked in the four full weeks preceding the date of the injury. (Emphasis added.)
Since Mr. Harrison did not work four full weeks prior to his injury, the workers’ compensation judge had to interpret the statute to fit the situation presented. The *800 workers’ compensation judge stated in his reasons for judgment:
I am aware of the Fus[i]lier versus Slick case, and I do agree in some respect with some aspects of the case. I am of the opinion, certainly, that if somebody — we’re talking about average weekly wage issue first — that if we’re talking about somebody who has worked a short period of time or who has been out of work without — not through any desire of their own for some period of time, that you go back and look for four full weeks. You try to find four weeks — well, in this instance, Mr. Harrison takes issue with the time sheets that say he was ill. But just for the sake of argument, if he had been working in January and there had been some other weeks in January where he was not listed as being ill, I certainly have no problem reaching farther back to find four full weeks.
But in this case, the only testimony— the only evidence I have of exactly how many hours he worked are these records. He can’t tell me day by day exactly how many hours he worked, so all I have are these records, and these records indicate a couple of days one week, a couple of days the next week and then a full week, and the full week that they show does have overtime. It has like 56 hours worth of time, which would be about 16 hours worth of overtime.
I am of the opinion that the interpretation of the act with regard to average weekly wage for an hourly employee is that they get the benefit of the full time 40-hour presumption or a calculation of the four full weeks worth of benefits— worth of wages earned, whichever is greater. It’s one or the other to give the claimant a change to go back, look for weeks, take advantage of all the overtime and be able to get a greater weekly wage than just full time. But in this case, since we can’t go back four full weeks, I certainly would have no problem only using three weeks if we had three full weeks and dividing by three or if we had two full weeks and dividing by two. But I don’t think that it’s fair to the employer to — I think that you have to balance the fairness to the employee and the employer when you’re computing average weekly wage.
And in light of the fact that I’ve got two weeks with sick time on them and then one full week, I think the only fair thing to do in using the act is, since I don’t have four full weeks and we have an “or” in there, to use the full time presumption.
|7So the court finds that Mr. Harrison’s average weekly wage is $220 a week based upon a 40-hour work week at 5.50 an hour.
Mr. Harrison points out that the one full week he worked prior to his accident he logged 56.5 hours and earned $346.13. Thus, he argues, that one week should be used to calculate his average weekly wage, based on the reasoning in Fusilier v. Slick Construction Company, 94-11 (La.App. 3 Cir. 6/1/94), 640 So.2d 788. In that case the court stated:
Fusilier did not complete four full weeks of work with Slick. The first week he logged thirty-two and a half hours, the next two weeks were full forty hour weeks and the week he was injured he worked twenty-one hours. During the two complete weeks that Fusilier worked, he put in twenty-one and a half hours overtime. The hearing officer adopted the calculation method utilized by Liberty Mutual, which based compensation on Fusilier’s regular pay in a forty hour week without regard to his overtime. Liberty Mutual justified the calculation by pointing out that Fusi *801 lier had not completed four full weeks of work as is apparently necessary under the statute. Fusilier contends that calculation of SEB should have been based on an average of the hours worked in those two complete weeks, including overtime. We agree.
The nature of workers’ compensation law requires a liberal construction of the statute. The language of the statute indicates the legislature’s intent to provide the worker with the maximum hours available by using the greater of an average of four weeks work or the wage at forty hours. Under normal circumstances, a worker who completes four full weeks will have overtime considered in the average as well. However, as in this case, if four full weeks are not completed and a forty hour week is used, the claimant unfairly receives nothing for any overtime he might have worked.
Fusilier, 94-11, pp. 5-6, 640 So.2d at 792.
Mr. Harrison argues that, based on the Ftisilier rationale, he is being discriminated against because his accident happened to have occurred before he had the opportunity to work four full weeks for A.K. Warehouse. He urges that he should benefit from the fact that he was able to earn overtime wages while employed by A.K. Warehouse just like the injured employee |swho happens to have worked three weeks longer than him would benefit from the overtime he earned before his accident.
However, in Fusilier, the court had three weeks to work with. In this case, there is only one full work-week history from which to extrapolate. Mr. Harrison worked 75 hours in 12 workdays prior to his accident, which averaged out to 6.25 hours per day. Mr. Harrison is suggesting that the court pick seven days out of the time before the accident and use those days only to calculate the average weekly wage. There is no legislative authority for doing so.
After a thorough review of the record and the jurisprudence, we cannot say that the workers’ compensation judge committed manifest error or was clearly wrong in calculating Mr. Harrison’s average weekly wage based on a forty-hour week.
ASSIGNMENT OF ERROR NO. 2
Mr. Harrison asserts that the workers’ compensation judge erred in failing to award supplemental earnings benefits. Louisiana Revised Statute 23:1221 provides in pertinent part:
3(c)(i) Notwithstanding the provisions of Subparagraph (b) of this Paragraph, for purposes of Subparagraph (a) of this Paragraph, if the employee is not engaged in any employment or self-employment, as described in Subparagraph (b) of this Paragraph, or is earning wages less than the employee is able to earn, the amount determined to be the wages the employee is able to earn in any month shall in no case be less than the sum the employee would have earned in any employment or self-employment, as described in Subparagraph (b) of this Paragraph, which he was physically able to perform, and (1) which he was offered or tendered by the employer or any other employer, or (2) which is proven available to the employee in the employee’s or employer’s community or reasonable geographic region, (ii) For purposes of Subsubparagraph (i) of this Subparagraph, if the employee establishes by clear and convincing evidence, unaided by any presumption of disability, that solely as a consequence of substantial pain, the employee cannot perform | flemployment offered, tendered, or otherwise proven to be available to him, the employee shall be deemed incapable of performing such employment.
*802 In order to recover supplemental earnings benefits, claimant must first prove by a preponderance of the evidence an inability to earn wages equal to 90 percent or more of the wages he earned before the accident. And it is only after such a showing that the burden of proof shifts to the employer who, if he wishes to contend that claimant is earning less than he is able to earn so as to defeat or reduce supplemental earnings benefits, bears the burden of proving that claimant is physically able to perform a certain job and that the job was offered to claimant or the job was available to claimant in his or the employer’s community or reasonable geographic region. Gilley v. Parkview Baptist School, 2000-1937, p. 4 (La.App. 1 Cir. 11/9/01), 804 So.2d 103, 105, writ granted, 2002-0623 (La.5/24/02), 816 So.2d 293, judgment affirmed, 2002-0623 (La.10/25/02), 832 So.2d 975.
The workers’ compensation judge found that Mr. Harrison met the initial burden of proving an inability to earn wages equal to 90% or more of the wages he earned before the accident, when he was released by his treating physician with restrictions that prevented him from returning to his job at A.K. Warehouse. The workers’ compensation judge also found that A.K. Warehouse met its burden of proving that work was available to Mr. Harrison that was within the restrictions imposed by his doctors and that those jobs would pay at least 90% of his pre-injury wage.
Mr. Harrison’s treating physician released him to work and agreed that jobs presented to him by the vocational rehabilitation counselor, which paid at least 90% of his pre-accident wages, were within his physical restrictions. Mr. Harrison notes that some of those jobs were discounted by |inthe workers’ compensation judge, and argues that those left were not suitable to him because he has a felony record and takes pain medication.
However, we note that A.K. Warehouse hired Mr. Harrison when he had a felony record. Further, Mr. Harrison’s treating physician knew that Mr. Harrison took pain medication when he signed off on the jobs. Dr. Broussard’s records from March 20, 2001, titled “REHAB CONFERENCE — Larry Harrison” note that:
Basically noted that I have not seen Larry for several months but he is taking his medications on a regular basis and this is something, I think that needs to be addressed. I have also reviewed the F.C.E. and noted that he does have abilities and restrictions. I have noted that the F.C.E. indicates some inconsistencies and certainly, to me, indicates that it likely represents less than maximum effort. I certainly believe he could work, at the very least, within the confines of the F.C.E. and perhaps to some marginal degree beyond that.
Dr. Broussard’s notes from August 24, 2001 state:
Larry Harrison is seen today for followup of his spinal complaints. I have basically told him that I had rehab meeting and I found that he is able to work within the confines of the F.C.E. and have so told his rehab person. He is telling me that he has found a job on his own that has to do with a drug center, where it is a very light duty job where he is sitting checking the clients in. This appears to fit within the confínes of the F.C.E. and I have signed off on it. He is to cheek back with me only as needed.
As pointed out by the workers’ compensation judge at the close of the trial, it is preferable for the claimant and his attorney to attend the meeting with the physician and the vocational rehabilitation counselor so that the physician and the *803 claimant can discuss the suitability of the jobs prior to the physician’s approval of them. However, in this case, Mr. Harrison and his attorney, although notified, failed to attend that meeting wherein any concerns could have been raised. Mr. Harrison failed to apply for any of the jobs found by the vocational rehabilitation counselor and failed to follow up on her offer of return to work assistance.
InWe cannot say that the workers’ compensation judge committed manifest error or was clearly wrong in finding that A.K. Warehouse met its burden of proving that work was available to Mr. Harrison which was within the restrictions imposed by Mr. Harrison’s doctors and that those jobs would pay at least 90% of Mr. Harrison’s pre-injury wage; thus, we cannot say that the workers’ compensation judge erred in finding Mr. Harrison was not entitled to supplemental earnings benefits.
Therefore, for the foregoing reasons, the workers’ compensation judge’s judgment is affirmed. Costs are assessed against Mr. Harrison.
AFFIRMED.

. In its answer A.K. Warehouse asked for reimbursement of this amount; however, at trial A.K. Warehouse conceded that it was only asking for a credit. Although A.K. Warehouse asked for a credit of $2,678.47 in its answer, and received a credit of $2,996.35 in the judgment, the payment records were entered into evidence without objection and were utilized to determine the amount of overpayment. See La. C.C.P. art. 1154.