CARLOS A. JUAREZ

VERSUS

AJ LAZO CONSTRUCTION, LLC, AND
LOUISIANA CONSTRUCTION AND
INDUSTRY SELF INSURER'S FUND (LCI)

NO. 22-CA-575

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE OFFICE OF WORKERS' COMPENSATION,
DISTRICT 7, STATE OF LOUISIANA
NO. 21-3075
HONORABLE SHANNON BRUNO BISHOP, JUDGE PRESIDING

September 20, 2023

**SCOTT U. SCHLEGEL**
**JUDGE**

Panel composed of Judges Susan M. Chehardy,
John J. Molaison, Jr., and Scott U. Schlegel

**AFFIRMED IN PART;**
**REVERSED IN PART**
    **SUS**
    **SMC**
    **JJM**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Alexis Barteet
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLEE,
CARLOS A. JUAREZ
 Jean-Marc Bonin
 Alexandre E. Bonin
 R. Christian Bonin

COUNSEL FOR DEFENDANT/APPELLANT,
AJ LAZO CONSTRUCTION, LLC, AND LOUISIANA CONSTRUCTION AND
INDUSTRY SELF INSURERS FUND
 Nathan L. Schrantz

**SCHLEGEL, J.**

Defendants/Appellants, AJ Lazo Construction, LLC (Lazo Construction) and Louisiana Construction and Industry Self Insurers Fund (LCI), seek review of the workers' compensation court's September 14, 2022 judgment entered in favor of claimant/appellee, Carlos A. Juarez. Defendants contend that the court erred 1) in calculating Mr. Juarez's average weekly wage (AWW) used to determine Mr. Juarez's temporary total disability benefits (TTD); 2) by awarding Mr. Juarez supplemental earning benefits (SEBs) at a zero-wage earning capacity; and 3) by awarding penalties and attorney's fees against defendants for failing to pay TTD and SEB benefits at a proper rate. Mr. Juarez answered the appeal and argues that he is entitled to 1) additional penalties and attorney's fees for defendants' failure to investigate his claim regarding his AWW and compensation rate; and 2) additional attorney's fees incurred to respond to defendants' appeal.

For the reasons stated more fully below, we reverse the judgment in part with respect to 1) the increase of the AWW calculation and corresponding award of past TTD benefits; and 2) the penalties and attorney's fees awarded in connection with the finding that defendants failed to pay TTD benefits at the proper rate. We affirm the judgment in all other respects. Finally, we deny Mr. Juarez's request in his answer to the appeal for additional penalties and attorney's fees.

## FACTS AND PROCEDURAL BACKGROUND

This matter arises out of a Disputed Claim for Compensation filed by Mr. Juarez against Lazo Construction and its insurer, LCI. On July 7, 2020, Mr. Juarez was working as a painter/drywall finisher for an uninsured subcontractor, Cuevas Construction, LLC, when he injured his right shoulder and was unable to work the following day. Mr. Juarez testified at trial that he only worked for Cuevas Construction for two weeks – from June 19, 2020 to July 7, 2020 – prior to his

injury. Prior to working for Cuevas Construction, Mr. Juarez testified that he did not have a permanent employer, but that he worked for different contractors. Mr. Juarez testified that Cuevas Construction paid him a rate of $18.00 per hour and he worked ten hours per day.

Four days after the accident, Mr. Juarez went to the emergency department at Ochsner Medical Center. He was diagnosed with right shoulder strain, received an injection and was referred for an orthopedic evaluation. On July 29, 2020, Mr. Juarez saw Dr. Chuck Cucchiara for right shoulder and neck pain. Dr. Cucchiara determined that Mr. Juarez was physically unable to work due to his shoulder injury, ordered an MRI, and referred him to a specialist. On September 1, 2020, Dr. Douglas Bostick reviewed the MRI of Mr. Juarez's shoulder and opined that he had a myotendinous strain of the supraspinatus and possible tearing of the anterior inferior labrum. He diagnosed Mr. Juarez with strain, impingement, and pain in his right shoulder. Dr. Bostick kept Mr. Juarez on "out of work" status and referred him to physical therapy.

Following written demand from Mr. Juarez's counsel, defendants initiated TTD benefits for Mr. Juarez on October 12, 2020. Because Cuevas Construction was uninsured, Lazo Construction assumed the workers' compensation obligation for Mr. Juarez. Defendants paid TTD benefits to Mr. Juarez based on an AWW of $720.00 resulting in a compensation rate of $480.02. Defendants contend that they were unable to obtain any wage records from Cuevas Construction and therefore, relied on Mr. Juarez's statement regarding his hourly rate, as well as two checks he received from Cuevas Construction before he was injured. Mr. Juarez provided defendants with copies of two checks, the first one dated "3/7/2020" in the amount of $954.00 and the other dated "6/27/2020" in the amount of $1,260.00.[1]

---

[1] Mr. Juarez contends that he received the check dated "3/7/20" during his second week of work just prior to the accident. He provided defendants with a photograph of his bank account indicating that he

On October 13, 2020, Mr. Juarez's counsel sent a Notice of Disagreement letter contending that defendants erred in their AWW calculation and were underpaying Mr. Juarez's TTD benefits. Specifically, Mr. Juarez argued that defendants should have based his AWW and compensation rate on the average of the two paychecks he received, which would have resulted in an AWW and compensation rate of $1,107.00 and $688.00, respectively. Defendants refused to modify the calculations, arguing that La. R.S. 23:1021(13)(a)(i) mandated that they utilize the 40-hour presumption to determine the AWW for a full-time hourly employee because Mr. Juarez had worked fewer than four weeks prior to the accident.[2]

As a result, Mr. Juarez filed his Disputed Claim for Compensation on June 1, 2021, complaining of the underpayment of his TTD benefits and further demanding penalties, attorney's fees, costs and interest for defendants' failure to pay the correct compensation rate. On or about February 1, 2022, defendants converted Mr. Juarez's TTD benefits to SEBs at a rate of $160.00 per week based on a minimum wage earning capacity of $480.00 per week. This prompted Mr. Juarez to file a motion for leave to amend and supplement his Disputed Claim for Compensation on February 7, 2022 to add claims that defendants acted arbitrarily and capriciously by converting his TTD benefits to SEBs. He further complained that he was not capable of earning $480.00 per week because he was a lifelong laborer with no formal education, who only speaks Spanish. Mr. Juarez further

---

deposited this check into his bank account on July 8, 2020. Mr. Juarez testified at trial that he was from Honduras and explained that when they write a date there, they place the day first and the month second.

[2] La. R.S. 23:1021(13)(a)(i) provides as follows:

(13) "Wages" means average weekly wage at the time of the accident. The average weekly wage shall be determined as follows:

(a) Hourly wages.

(i) If the employee is paid on an hourly basis and the employee is employed for forty hours or more, his hourly wage rate multiplied by the average actual hours worked in the four full weeks preceding the date of the accident or forty hours, whichever is greater[.]

prayed for additional penalties and attorney's fees due to the alleged improper modification of his benefits.

Due to a conflict of opinions between the physicians, the workers' compensation court appointed an independent medical examiner, Dr. John B. Cazale, who on August 10, 2021, opined that Mr. Juarez could perform light or light/medium work. He further opined that Mr. Juarez could not lift overhead or climb a ladder. Dr. Cazale also stated that Mr. Juarez's lifting restrictions would be 20 to 25 pounds from the ground to the waist level, and not higher than the waist level.

Following the IME, Mr. Juarez remained under Dr. Bostick's care and received physical therapy for his shoulder injury. Mr. Juarez contends that at the time of trial on May 31, 2022, he had not been released to work by any of his treating physicians. The parties stipulated at trial that Mr. Juarez was injured in the course and scope of his employment and that he earned $5,536.00 for 26 weeks prior to the accident on July 7, 2020.

Following trial, the workers' compensation court determined that Mr. Juarez had only worked for two full weeks prior to the work accident on July 7, 2020, but agreed with Mr. Juarez that his AWW should have been $1,107.00 with a compensation rate of $688.00. As a result, the workers' compensation court determined that defendants owed Mr. Juarez past indemnity for an underpayment in the amount of $207.98 per week from July 7, 2020 through February 1, 2022, when defendants stopped TTD benefits. The court further explained in its reasons for judgment that defendants properly converted Mr. Juarez's TTD benefits to SEBs because the IME doctor determined that Mr. Juarez was "able to perform some type of work."

Nevertheless, the workers' compensation court determined that defendants had failed to prove Mr. Juarez's earning capacity. Consequently, the court

determined that Mr. Juarez was entitled to SEBs at a zero-wage earning capacity from February 5, 2022 and ongoing. The court also awarded penalties in the amount of $6,000.00 for three violations, including the failure to timely initiate TTD benefits, failure to pay TTD benefits at the proper rate, and failure to timely pay SEB benefits at the proper rate. The court additionally awarded $15,000.00 in attorney's fees for the violations.

## DISCUSSION

In a workers' compensation case, the appellate court's review of factual findings made by the lower court is the manifest error or clearly wrong standard. *Dean v. Southmark Construction*, 03-1051 (La. 7/6/04), 879 So.2d 112, 117. The factual findings of the workers' compensation court will not be set aside by a reviewing court unless they are found to be clearly wrong in light of the record viewed in its entirety. *Id.*; *Summers v. Ritz-Carlton New Orleans*, 14-800 (La. App. 5 Cir. 5/28/15), 171 So.3d 329, 335, *writ denied*, 15-1256 (La. 9/25/15), 178 So.3d 569. When legal error interdicts the fact-finding process in a workers' compensation proceeding, the *de novo* standard of review applies, rather than the manifest error standard. *Dorion v. Gulf States Asphalt Co., L.P.*, 08-670 (La. App. 5 Cir. 4/28/09), 14 So.3d 44, 48, *writ denied*, 09-1167 (La. 9/18/09), 17 So.3d 972. The interpretation of statutes pertaining to workers' compensation involves a question of law and warrants a *de novo* review to determine if the ruling was legally correct. *Butler v. Jefferson Par. Fire Dep't*, 15-659 (La. App. 5 Cir. 2/24/16), 186 So.3d 1231, 1235.

### *Average Weekly Wage Calculation*

In their first assignment of error, defendants contend that the workers' compensation court erred as a matter of law by calculating Mr. Juarez's AWW using the average of two weeks of non-sequential earnings instead of the 40-hour presumption despite the clear language of La. R.S. 23:1021(13)(a)(i).

We first consider whether the workers' compensation court was clearly wrong in its factual determination that Mr. Juarez worked two consecutive weeks prior to his injury. It is clear from the record that the workers' compensation court considered and rejected the defendants' arguments that the checks dated "3/7/20" ($954.00) and June 27, 2020 ($1,260.00) contradict Mr. Juarez's testimony that he worked two to three weeks prior to the work accident. Defendants fail to recognize that Mr. Juarez also provided evidence that he deposited a check in the amount of $1,260.00 on June 29, 2020, and a check in the amount of $954.00 on July 8, 2020, thereby supporting his testimony regarding the consecutive weeks of work. Accordingly, the finding that Mr. Juarez worked two consecutive weeks prior to his injury did not constitute manifest error.

Nevertheless, we conclude that the workers' compensation court erred as a matter of law in calculating Mr. Juarez's AWW when it failed to apply the 40-hour presumption after making the factual determination that Mr. Juarez had only worked two sequential weeks prior to the accident. La. R.S. 23:1021(13)(a)(i) plainly states that "[i]f the employee is paid on an hourly basis and the employee is employed for forty hours or more, [the AWW is] his hourly wage rate multiplied by the average actual hours worked in the four full weeks preceding the date of the accident or forty hours, whichever is greater". Mr. Juarez did not work "four full weeks" prior to the accident.

The workers' compensation court erroneously relied upon Mr. Juarez's argument that it should liberally construe the statute in his favor by finding that La. R.S. 23:1021(13)(a)(i) does not apply if an employee has not worked four full weeks as previous courts had done when addressing similar circumstances, particularly in *Fusilier v. Slick Construction Company*, 94-11 (La. App. 3 Cir. 6/1/94), 640 So.2d 788, and *Upchurch v. Randall Well Service*, 45,056 (La. App. 2 Cir. 4/14/10), 34 So.3d 500. In those matters, the appellate courts relied on the

premise that workers' compensation statutes should be interpreted liberally to allow the employee maximum benefits, and therefore determined that the proper calculation was to divide the actual hours worked or wages received only by the numbers of weeks actually worked prior to injury, instead of four weeks, thereby allowing for a higher number of hours or wages if the employee worked overtime during the limited period. *Fusilier*, 640 So.2d at 792; *Upchurch*, 34 So.3d at 502-03.[3]

In its extensive reasons for judgment, the workers' compensation court indicated that it accepted Mr. Juarez's position as follows:

> In this case, Claimant only worked for two weeks. He testified and the evidence shows that he began working for Cuevas in June 2020 and received two pay checks for the time worked through his date of accident. He worked less than four full weeks prior to his work accident. Thus, this court looks to <u>Fusiler</u> (sic) and <u>Upchurch</u> wherein the Second and Third Circuits held that 'the proper way to calculate an average weekly wage for someone who has not worked four full weeks was to use the actual wages divided by the actual number of weeks worked.' <u>William Upchurch v. Randall Well Service</u>, 34 So.3d 500, (2nd Cir. 2010) citing <u>Todd Fusilier v. Slick Construction Company</u>, 640 So2d 788 (3rd Cir. 1994). The testimony and evidence presented to the Court shows that Claimant worked two weeks. He received $1,260 for the first week of work and $954 for the second week of work. As such, his average weekly wage is $1,107 with a compensation rate of $688 (the maximum rate).

Defendants, however, correctly point out that the legislature enacted La. R.S. 23:1020.1(D)(2) in 2012, which now provides that laws pertaining to workers' compensation shall not be broadly and liberally construed in favor of either an employer or employee and in fact, "**shall be construed in accordance with the basic principles of statutory construction and not in favor of either employer or employee**." La. R.S. 23:1020.1(D)(3) further instructs that the liberalization or broadening of workers' compensation statutes shall be the exclusive purview of the

---

[3] We observe that the *Upchurch* court qualified its decision by declaring that "[w]e decline to create a bright line rule for cases in which La. R.S. 23:1021 does not apply. Our holding is limited to the facts before us. A determination as to whether this statute is applicable must be made on a case-by-case basis." *Id*. at 503.

legislature. *See Hartman v. St. Bernard Parish Fire Department & Fara*, 20-693 (La. 3/24/21), 315 So.3d 823, 829; *Burgess v. Sewerage & Water Board of New Orleans*, 16-2267 (La. 6/29/17), 225 So.3d 1020, 1028; *Griggs v. Bounce N' Around Inflatables, LLC*, 18-726 (La. 1/30/19), 281 So.3d 628, 632. Additionally, this Court notes that La. R.S. 23:1020.1(C), which was also enacted in 2012, provides that the "Louisiana Workers' Compensation Law is to be interpreted so as to assure the delivery of benefits to an injured employee in accordance with this Chapter" and "[t]o facilitate injured workers' return to employment at a reasonable cost to the employer."

The starting point in the interpretation of any statute is the language of the statute itself. *Griggs*, 281 So.3d at 631. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law must be applied as written, and no further interpretation may be made in search of the legislative intent. La. C.C. art. 9. When the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law. La. C.C. art. 10.

With these principles in mind, we agree with defendants that the plain language of La. R.S. 23:1021(13)(a)(i) is clear and unambiguous. As noted above, La. R.S. 23:1021(13)(a)(i) simply provides that if the "employee is employed for forty hours or more," then his AWW is the average of the actual hours worked in the four full weeks prior to the accident, or 40 hours, whichever is greater. Mr. Juarez did not work four full weeks prior to the accident, and therefore the workers' compensation court should have utilized the 40-hour alternative provided by the plain language of the statute. It is possible to apply La. R.S. 23:1021(13)(a)(i) as written to the present situation and therefore, it is not necessary or appropriate to resort to outside jurisprudence to determine the AWW.

The First Circuit Court of Appeal reached a similar conclusion in *Harrison v. Auto King*, 03-1620 (La. App. 1 Cir. 5/14/04), 879 So.2d 796, which involved an employee who was injured after working only one full week. The employee worked approximately 16.5 hours of overtime during a seven-day period that the employee urged the court to use to calculate his AWW. The appellate court affirmed the workers' compensation court's decision to use the 40-hour presumption to calculate the AWW and recognized that there was "no legislative authority" to find otherwise. *Id.* at 801. We similarly find that pursuant to the legislature's explicit instruction in La. R.S. 23:1020.1(D)(3), we do not have the authority to liberalize or broaden the scope of the provisions governing AWW calculations.

Mr. Juarez also argued that by applying the statute as written, he would unfairly receive nothing for the extra hours he worked in the two weeks prior to his injury. However, we observe that if defendants paid Mr. Juarez indemnity based on the AWW rate he suggests, he would receive much more in workers' compensation benefits than he reported in actual wages on his 2020 tax returns. The parties stipulated that based on his 2020 tax return, Mr. Juarez earned $5,536.00 in the first 26 weeks of 2020 *prior* to his injury. Mr. Juarez contends that he should have received a compensation rate of $688.00 for TTD benefits, which would total $17,888.00 for 26 weeks. At the rate of $480.02 paid by defendants, Mr. Juarez received $12,480.52 in a 26-week period. We do not find that Mr. Juarez is deprived of benefits by applying the applicable AWW statute as written.

Accordingly, we reverse the portion of the workers' compensation court's judgment that determined the AWW should be $1,107.00 with a compensation rate of $688.00, and further reverse the finding that Mr. Juarez is owed past indemnity

for an underpayment of $207.98 per week beginning July 7, 2020 through February 1, 2022.

### *Supplemental Earnings Benefits*

In their second assignment of error, defendants argue that the workers' compensation court committed a legal error by finding that Mr. Juarez was entitled to SEBs at a zero-dollar wage earning capacity. Defendants argue that the IME doctor determined that Mr. Juarez was capable of light to medium duty work and therefore, defendants contend they are entitled to a presumption that Mr. Juarez could earn at least minimum wage at $290.00 per week.

The purpose of SEB benefits is to compensate an injured employee for the wage-earning capacity he lost as the result of an accident. *Banks v. Industrial Roofing & Sheet Metal Works, Inc.*, 96-2840 (La. 7/1/97), 696 So.2d 551, 556. La. R.S. 23:1221(3)(a)(i) provides that an employee is entitled to receive SEBs if he suffers a work-related injury that results in his inability to earn ninety percent (90%) or more of his average pre-injury wage. *Id*. Initially, the employee bears the burden of proving by a preponderance of the evidence that the injury caused his inability to earn that amount based on the facts and circumstances of the individual case. *Poissenot v. St. Bernard Parish Sheriff's Office*, 09-2793 (La. 1/9/11), 56 So.3d 170, 174. The focus is on the amount of wages earned before and after the accident, not the type of occupation or type of work performed. *Id*. at 175. The burden does not shift to the employer merely because an employee proves he is unemployed at the time of trial or unable to obtain the same type of job as before the accident. *Id*. at 178. In determining whether an injured employee has made out a *prima facie* case of entitlement to SEBs, the workers' compensation court should take into account all of the factors that may bear on an employee's ability to earn a wage. *Id*. at 174.

The workers' compensation court's factual finding regarding Mr. Juarez's entitlement to SEBs is subject to the manifest error/clearly wrong standard, not *de novo* review as suggested by defendants. In determining whether a hearing officer's finding that an employee has met his initial burden of proving entitlement to SEBs is manifestly erroneous, a reviewing court must examine the record for all evidence that bears upon the employee's inability to earn 90% or more of his pre-injury wages. *Seal v. Gaylord Container Corp.*, 97-688 (La. 12/02/97), 704 So.2d 1161, 1166.

In concluding that Mr. Juarez met his initial burden to prove his inability to earn 90% or more of his pre-injury wages, the workers' compensation court found as follows:

> Claimant testified that he has been unable to obtain a job. He testified that he has applied for jobs, but he has not received a response regarding employment. Further, based on the restrictions provided by Dr. Cazales [sic], Claimant is restricted from performing certain tasks. Defendant scheduled Claimant for vocational rehabilitation. The vocational counselor provided a job listing and Claimant testified that he applied for the jobs presented to him. However, he stated that he has not received a response. Claimant testified that he has not applied for any other jobs. Claimant testified that he has not performed any other work since the accident. As previously mentioned, Claimant's doctor has not released him to return to work and the Court's IME doctor has placed him under restrictions.

In addition, we find that after examining the entire record, Mr. Juarez had more than physical limitations that affected his ability to find work. Mr. Juarez's limited education, work history that is limited to hard labor and construction, and language limitations are additional factors that mitigate in favor of the workers' compensation court's conclusion that Mr. Juarez met his initial burden of proof. Consequently, we find that the workers' compensation court's finding that Mr. Juarez met his initial burden of proof to establish a *prima facie* case of his inability to earn 90% or more of his pre-injury wages was not clearly wrong.

Having concluded that Mr. Juarez satisfied his initial burden, we now consider whether defendants carried their burden of proving that jobs were available to Mr. Juarez within his work restrictions and geographic area that would enable him to earn 90% or more of his pre-injury wage. Only after the employee satisfies his or her initial burden, the burden shifts to the employer to prove, by a preponderance of the evidence, that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in his or the employer's community or geographical region. *Poissenot*, 56 So.2d at 174. An employer may discharge its burden of proving job availability by establishing, at a minimum, the following, by competent evidence: (1) the existence of a suitable job within claimant's physical capabilities and within claimant's or the employer's community or reasonable geographic region; (2) the amount of wages that an employee with claimant's experience and training can be expected to earn in that job; and (3) an actual position available for that particular job at the time that the claimant received notification of the job's existence. *Banks*, 696 So.2d at 557. "Suitable job" means a job that claimant is not only physically capable of performing, but one that also falls within the limits of claimant's age, experience, and education, unless the employer or potential employer is willing to provide any additional necessary training or education. *Id.*

The workers' compensation court reasoned as follows in determining that defendants failed to meet their burden and that Mr. Juarez's SEBs should be based on zero-wage earning capacity:

> In the instant case, a listing of jobs was admitted into evidence. However, no evidence or testimony was provided to show that the jobs were located in Claimant's geographical area, that the jobs were within Claimant's restrictions, or that the jobs were available. Louisiana law does not require actual job placement. However, it does require that specific information be provided in order to meet its burden. Upon reviewing the testimony and evidence in this matter, the

> Court finds that Claimant's SEB were improperly calculated. The Court finds that a conversion from TTD to SEB was proper. However, Defendant has failed to show Claimant's earning capacity. As such, Claimant's SEB should be based on $0 earning capacity.

Considering the foregoing and applying the applicable minimum standard, we conclude that the workers' compensation court was not clearly wrong in finding that defendants failed to present sufficient, competent evidence to carry their burden with respect to the SEB award. Therefore, we affirm the workers' compensation court's finding that Mr. Juarez is entitled to SEBs at a zero-wage earning capacity from February 5, 2022 and ongoing.

### *Penalties and Attorney's Fees*

In their final assignment of error, defendants argue that they are not liable for penalties or attorney's fees because they acted reasonably in calculating the AWW based on the 40-hour presumption and Mr. Juarez failed to meet his burden to prove he was incapable of earning 90% of his pre-injury wage.

The determination of whether an employer or insurer should be cast with penalties and attorney's fees is a question of fact subject to the manifest error/clearly wrong standard. *Summers*, 171 So.3d at 347. Awards of penalties and attorney's fees in workers' compensation cases are essentially penal in nature, being imposed to discourage indifference and undesirable conduct by employers and insurers. *Salgado v. Tri-Parish Roofing & Home Improvements*, 19-407 (La. App. 5 Cir. 5/27/20), 296 So.3d 1201, 1208. La. R.S. 23:1201(F)(2) provides that penalties and attorney's fees for failure to properly pay benefits shall be assessed against an employer or insurer unless the claim is reasonably controverted or resulted from conduct over which the employer or insurer had no control. When the employer or insurer commits multiple violations, La. R.S. 23:1201(F) allows for the imposition of multiple penalties. *Salgado,* 296 So.3d at 1208. An assessment of a penalty under La. R.S. 23:1201(F) may be "in an amount up to the

greater of twelve percent of any unpaid compensation or medical benefits, or fifty dollars per calendar day for each day in which any and all compensation or medical benefits remain unpaid … together with reasonable attorney fees for each disputed claim." The statute, however, limits the amount of each separate penalty to $2,000.00. The maximum amount of penalties that may be imposed, regardless of the number of penalties, is $8,000.00. La. R.S. 23:1201(F).

The workers' compensation court awarded a total of $6,000.00 in penalties and $15,000.00 in attorney's fees against defendants for three different violations: 1) the failure to timely initiate benefits; 2) the failure to pay TTD benefits at a proper rate; and 3) the failure to pay SEB benefits at the proper rate. Because we reversed the workers' compensation court's findings that defendants used the improper AWW to calculate TTD benefits, we also reverse the award of penalties for that violation and reduce the penalties awarded to Mr. Juarez from $6,000.00 to $4,000.00. We further reduce the attorney's fees awarded to Mr. Juarez to $7,500.00, as we find a significant portion of the litigation between the parties involved the claim that defendants improperly calculated Mr. Juarez's AWW. We otherwise find no manifest error in the workers' compensation court's award of penalties and attorney's fees.[4]

Furthermore, because we find that defendants properly calculated the AWW and compensation rate, we deny Mr. Juarez's request in his answer to the appeal to award additional penalties for defendants' alleged failure to properly investigate his claim to increase TTD benefits. We also deny Mr. Juarez's request for additional attorney's fees for defending this appeal considering that this Court

---

[4] Though defendants raised a general assignment of error with respect to the award of penalties and attorney's fees, they did not brief any issues regarding the awards for their failure to timely initiate TTD benefits. As such, we find that to the extent defendants appealed the awards for this violation, the issue is abandoned on appeal. See Uniform Rules – Courts of Appeal, Rule 2-12.4(B)(4) ("All assignments of error and issues for review shall be briefed. The court may deem as abandoned any assignment of error or issue for review which has not been briefed."); *Boutall v. Christakis, P.M., Co. LLC*, 17-402 (La. App. 5 Cir. 12/27/17), 236 So.3d 1268, 1272.

reversed a substantial portion of the workers' compensation court's judgment in favor of the appealing parties.

**DECREE**

Considering the foregoing, we reverse the workers' compensation court's September 14, 2022 judgment in part with respect to its findings 1) that Mr. Juarez's AWW should have been $1,107.00 with a compensation rate of $688.00; and 2) that defendants owed Mr. Juarez past indemnity for the underpayment of his TTD benefits in the amount of $207.98 per week from July 7, 2020 through February 1, 2022. Based on these rulings, we also reduce the total penalties awarded to Mr. Juarez to $4,000.00, and the total attorney's fees awarded to $7,500.00. We affirm the judgment in all other respects. Finally, we deny Mr. Juarez's request in his answer to the appeal for additional penalties and attorney's fees.

**AFFIRMED IN PART;**
**REVERSED IN PART**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**SEPTEMBER 20, 2023** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL
PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

# 22-CA-575

**E-NOTIFIED**

OFFICE OF WORKERS' COMPENSATION, DISTRICT 7 (CLERK)
HON. SHANNON BRUNO BISHOP (DISTRICT JUDGE)
ALEXANDRE E. BONIN (APPELLEE)          JEAN-MARC BONIN (APPELLEE)          R. CHRISTIAN BONIN (APPELLEE)
NATHAN L. SCHRANTZ (APPELLANT)

**MAILED**

NO ATTORNEYS WERE MAILED